OPINION
{¶ 1} Defendant-Appellant Bart Housholder ("Housholder") appeals from the April 15, 2008 Decision/Order Judgment Entry of the Court of Common Pleas of Shelby County, Ohio finding against Housholder and in favor of Plaintiff-Appellees JCF Investments ("JCF") on JCF's claims for unpaid rent. The trial court also found in favor of JCF on Housholder's counterclaim, and in favor of Third Party Defendant-Appellees, Janice Ludwig nka Janice Favors and Fred Favors ("the Favors") against Third Party Plaintiff-Appellant, Housholder on claims that Appellees caused the breach of the lease and for unjust enrichment. The trial court also discharged a mechanics lien filed by Housholder.
 {¶ 2} This matter stems from the lease of a storefront in Pasco, Shelby County, Ohio. This storefront is part of a building acquired by JCF. The principal owners of JCF are the Favors. The Favors owned the building for a very short time when they were approached by Housholder about entering into a lease for one of the storefronts. Apparently, Housholder had contacted the *Page 3 
previous owners of the building concerning a lease, prior to the sale of the building. Specifically, Housholder intended to use the storefront to open a pizza parlor.
 {¶ 3} The parties initially entered into an oral lease, defining the terms for the use of the storefront. However, at some point, the parties decided to incorporate the terms of the lease into a written lease agreement. The lease agreement utilized by the parties was actually a form lease purchased from an office supply company which involved filling in blank spaces with pertinent information.
 {¶ 4} When the lease of the storefront was initiated, it was the understanding of both parties that Housholder would need to renovate the storefront in order to open a pizza parlor. It appeared to be the agreement of the parties that Housholder would be responsible for completing any necessary renovations as well as getting any required permits to complete the renovations or open the business.
 {¶ 5} Housholder made contact with Rebecca Hart ("Hart"), a sanitarian with the Board of Health, concerning what permits he would need in order to renovate the storefront. Hart testified that she told Housholder that the rented storefront could lawfully be used as a pizza parlor if he complied with all of the regulations of the County Building Department and the Health Department, but *Page 4 
informed Housholder that he would need to obtain a building permit before commencing the renovations.
 {¶ 6} Housholder testified that he received conflicting information concerning what he would need to procure a building permit; and before obtaining the required building permit, Housholder commenced renovations on the storefront. However, because Housholder had not obtained the proper building permit, he received a stop work order from the County Building Department.
 {¶ 7} After receiving the stop work order, Housholder again made contact with the County Building Department to determine what would be necessary to get the building permit. Housholder testified that he was told he would need blueprints, and was apparently under the impression that he would need blueprints of both the existing storefront and possibly the remainder of the building in which the storefront was located. However, no current blueprints were available for the building or the storefront. Housholder investigated the cost of blueprints, attempted to convince the Favors to share the cost of the blueprints, and when he was unsuccessful in obtaining blueprints, stopped paying the rent on the storefront.
 {¶ 8} On February 20, 2007 JCF filed a "Complaint in Forcible Entry and Detention with Claim for Rent" against Housholder in the Sidney Municipal Court. Housholder answered and filed a "Counterclaim and Cross-claim" on March 6, 2007 claiming that JCF and the Favors 1)breached the lease by *Page 5 
knowing at the time the lease was executed that a pizza parlor could not be opened in the storefront; 2) made false and fraudulent representations causing injury to Housholder; 3) breached the express and implied warranties of the lease; 4) were unjustly enriched by Housholder's renovations to the storefront; and 5) failed to pay a mechanics lien that Housholder placed on the storefront.
 {¶ 9} The case was subsequently transferred to the Common Pleas Court of Shelby County on March 29, 2007. Various answers and responses were filed as well as various motions for summary judgment.
 {¶ 10} The matter progressed to trial on January 3, 2008. The trial court found against Housholder and in favor of Plaintiff-Appellees JCF Investments ("JCF") on JCF's claims for unpaid rent, on Housholder's counterclaim, and in favor of Third Party Defendant-Appellees, the Favors against Third Party Plaintiff-Appellant, Housholder. Ultimately, the trial court found that Housholder was to pay JCF the amount of $1075.00 and forfeit his security deposit in the amount of $500.00.
 {¶ 11} Housholder now appeals, asserting six assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANT BREACHED THE LEASE AGREEMENT, IN ERRONEOUSLY INTERPRETING THE MEANING OF PARAGRAPH 2 OF THE LEASE. *Page 6 
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANT BREACHED THE LEASE AGREEMENT, BY ERRONEOUSLY DETERMINING THAT APPELLANT ONLY NEEDED TO PROVIDE BLUEPRINTS OF THE PROPOSED CONSTRUCTION AND NOT OF THE EXISTING STOREFRONT AND ADJACENT PREMISES.
 ASSIGNMENT OF ERROR III THE TRIAL COURT ERRED IN DETERMINING THAT THE APPELLANT BREACHED THE LEASE AGREEMENT, AS THE APPELLEES HAD A DUTY UNDER OHIO LAW TO PROVIDE BLUEPRINTS, THE LEASE DID NOT SHIFT THIS DUTY TO APPELLANT, APPELLANT WAS NOT THE AGENT OF THE APPELLEES, AND THE STATUTE DOES NOT SHIFT THE DUTY TO PROVIDE BLUEPRINTS TO THE OWNER'S AGENT.
 ASSIGNMENT OF ERROR IV THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANT COULD NOT RECOVER UNDER HIS CLAIM FOR UNJUST ENRICHMENT.
 ASSIGNMENT OF ERROR V THE TRIAL COURT ERRED IN DETERMINING THAT THE APPELLANT'S MECHANIC'S LIEN MUST BE DISCHARGED.
 ASSIGNMENT OF ERROR VI THE TRIAL COURTS [SIC] DETERMINATION THAT THE APPELLANT KNEW OR SHOULD HAVE KNOWN THAT HE NEEDED TO OBTAIN A BUILDING PERMIT BEFORE COMMENCING CONSTRUCTION ON THE STOREFRONT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. *Page 7 
 First Assignment of Error {¶ 12} In his first assignment of error, Housholder argues that the trial court erred in determining that he breached the lease agreement. Specifically, Housholder argues that the trial court found a breach of the lease by incorrectly interpreting Paragraph 2 of the lease agreement.
 When construing and interpreting lease provisions, courts have applied traditional contract principles. See Myers v. E. Ohio Gas Co. (1977), 51 Ohio St.2d 121, 125, 364 N.E.2d 1369; Downtown Assoc., Ltd. v. Burrows Bros. Co. (1986), 34 Ohio App.3d 296, 297, 518 N.E.2d 564. We are mindful in our review of the lease provision that, "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in it." Buckeye Union Ins. Co. v. Consol. Stores Corp. (1990), 68 Ohio App.3d 19, 24, 587 N.E.2d 391 (Citations omitted). When the language in a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. Davis v. Loopco Industries, Inc. (1993), 66 Ohio St.3d 64, 66, 609 N.E.2d 144. In such a case, "* * * the court must give effect to the agreement's express terms and it need not go beyond the plain language of the agreement to determine the parties' rights and obligations." First Natl. Bank of Cincinnati v. Cianelli (1991), 73 Ohio App.3d 781, 785, 598 N.E.2d 789.
United Mobile Homes v. Bollinger (November 21, 1997), 3rd
Dist. No. 9-97-51. See also Bucher v. Schmidt, 3rd Dist. No. 5-01-48, 2002-Ohio-3933.
 {¶ 13} As previously noted, the lease at issue in the present case was a form lease procured from an office supply store. To complete the lease, the parties filled in the blank spaces in the form lease with the appropriate information. As completed, Paragraph 2 read as follows: *Page 8 
 Lessee shall use and occupy the premises for Pizza Parlor. The premises shall be used for no other purpose. Lessor represents that the premises may lawfully be used for such purpose. Lessee shall not use the premises for the purposes of storing, manufacturing or selling any explosives, flammables, or other inherently dangerous substance, chemical, thing, or device.
Housholder argues that Paragraph 2 should be read to hold JCF to a promise that the storefront could be used as a pizza parlor and that JCF warranted that use.
 {¶ 14} In interpreting this provision of the lease, the trial court found that
 [P]aragraph 2 merely asserts that it is lawful to operate a pizza parlor in those premises once all of the necessary permits required are obtained. The testimony of Rebecca Hart affirms that the premises could be used as a pizza parlor. Health Department permits would have been issued once the construction had been completed and the property inspected. It was Housholder's failure to obtain a building permit and complete the construction that caused his inability to open the pizza parlor. Accordingly, this Court finds that JCF and Favors did not breach the provisions of paragraph 2 of the lease.
 {¶ 15} We agree with the interpretation of the trial court, finding that the plain language of the paragraph 2 of the lease supports a reading that a pizza parlor could lawfully be operated in the rented storefront. Moreover, both parties knew, before entering the lease, that the storefront was not currently ready to be operated as a pizza parlor. Accordingly, Housholder's first assignment of error is overruled.
 {¶ 16} As an initial matter, before addressing Housholder's remaining assignments of error, we note that Housholder failed to present any citations to *Page 9 
legal authority or statutes in crafting some of these assignments of error. Moreover, none of these assignments of error contains a standard of review. Pursuant to App. R. 16(A)(7), appellants are required to include in their briefs:
 An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.
 {¶ 17} In the present case, Housholder failed to present any citations to authority or statutes in his Second, Fourth, or Sixth Assignments of Error. However, in his Sixth Assignment of Error, he states that the conclusion of the trial court was against the manifest weight of the evidence. Therefore, we will review his remaining assignments of error using the manifest weight of the evidence standard, as that appears to be the only standard cited and the only method of review appropriate for the arguments as presented by Housholder.
 {¶ 18} When reviewing evidence presented at civil trial, an appellate court must not reweigh the evidence. In C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, the Ohio Supreme Court held that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."See also, Vogel v. Wells (1991), 57 Ohio St.3d 91, 566 N.E.2d 154;Ross v. Ross (1980), 64 Ohio St.2d 203, 414 N.E.2d 426. An *Page 10 
appellate court should not substitute its judgment for that of the trial court when there exists competent, credible evidence going to all the essential elements of the case. In Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273, the Court wrote: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
 Second Assignment of Error {¶ 19} In his second assignment of error, Housholder argues that the trial court erred in finding that Housholder only needed blueprints of the proposed construction and not the existing storefront. More specifically, Housholder argues that if the trial court had found that he needed blueprints of the entire structure, they could not have found that Housholder breached the lease. Housholder cites no authority for this proposition. Moreover, Housholder fails to cite to any testimony that would indicate that blueprints of the entire existing building were necessary prior to the commencement of construction.
 {¶ 20} Housholder generally cites to OAC 4101:1-1-06, although he cites no particular section of the Ohio Administrative Code, for the requirement that blueprints of both the proposed construction to the storefront and the existing structure of the entire building are necessary before a building permit could be *Page 11 
obtained. However, this Court was unable to find any language in the Ohio Administrative Code that would have required Housholder to provide blueprints of both the proposed construction and the existing building as a prerequisite to obtaining a building permit.
 {¶ 21} The trial court found, by relying on the testimony of John E. Bull, of the National Inspection Corporation that "The Building Department required plans of the proposed construction for which a building permit had been applied, not blueprints or plans of the existing structure."
 {¶ 22} Bull is a building official for the National Inspection Corporation, which contracts with the Shelby County Building Department and the Shelby County Health Department to handle building permits. Bull testified that he sent a letter to Housholder's wife in August 2006 outlining the necessary requirements for obtaining a building permit. Moreover, Bull explained the process of obtaining a building permit at trial.
 What's necessary for a building permit is a set of drawings sealed by a registered architect engineer just with description and drawing of whatever work is going to be performed for a specific project and that along with an application submitted for a building permit.
(Tr.p. 318).
 {¶ 23} Bull was specifically asked, at trial, if there were circumstances in which blueprints would not be necessary to obtaining a building permit. He *Page 12 
testified that it was his decision whether blueprints were needed, which he would make while speaking with a person seeking a permit or meeting at the proposed construction site to inspect the work that would need to be completed. With respect to the rented storefront at issue in the present case, Bull was never contacted regarding whether blueprints were needed to obtain a building permit. Accordingly, Bull did not have the opportunity to evaluate whether any blueprints would be necessary in this case. (Tr.p. 321). However, his testimony was clear that blueprints of the entire building would not be necessary.
 {¶ 24} Moreover, Rebecca Hart, a sanitarian with the Health Department testified that although plans were needed to get the requisite food service permits, only plans of the storefront were needed. Specifically, Hart testified that she never told Housholder that he would need plans of the entire building. (Tr.p. 289). Moreover, Hart testified that Housholder was required to provide the Health Department with some plans, drawn to scale, but was not required to provide the health department with blueprints of anything beyond the storefront being renovated. (Tr.p. 290).
 {¶ 25} Therefore, we find the trial court's conclusion that blueprints of the existing structure were not required was supported by competent, credible evidence. Accordingly, Housholder's second assignment of error is overruled. *Page 13 
 Third Assignment of Error {¶ 26} In his third assignment of error, Housholder argues that JCF had a duty to provide him with blueprints of the storefront and that by failing to act accordingly, JCF breached the lease. Moreover, Housholder claims that because he was not the agent of JCF, he was not required to provide blueprints of the storefront and JCF was not absolved of its duty to provide blueprints of the existing storefront. Therefore, Housholder argues that because JCF failed to provide the necessary blueprints, the trial court erred in finding him in breach of the lease.
 {¶ 27} In its Judgment Entry, the trial court found, with respect to this argument, as follows:
 Housholder contends that, as owners, JCF and Favors were responsible for supplying blueprints. If that is true and if their failure to provide blueprints prevented Housholder completing the construction, that conduct could excuse Housholder from performing his obligations under the lease.
 The Building Department required blueprints or plans before a building permit would be issued. Housholder's testimony seems to indicate that he believes that blueprints of the existing building were required. Housholder misconstrues what was required. The Building Department required plans of the proposed construction for which a building permit had been applied, not blueprints or plans of the existing structure.
 The evidence is clear that JCF and Favors had leased a space to Housholder and authorized him to take whatever steps necessary to remodel the space to suit his needs. JCF and Favors could hardly be expected to have the plans or blueprints *Page 14 for a remodeling project under the control of Housholder. It was Housholder who had complete control over the remodeling. It was Housholder who made contacts with the Health Department and with the Building Department. It was Housholder who dealt with the Building Department after the stop work order. The parties by their conduct had made Housholder the owner's agent for those purposes. Nor can it be said that JCF or Favors should bear the expense of the blueprints. It is evident from the testimony that the cost of remodeling and construction and the cost of permits was intended to be expense of Housholder.
 {¶ 28} Given our disposition of Housholder's second assignment of error, agreeing with the trial court's finding that blueprints of the original storefront were not necessary in obtaining a building permit, we construe this assignment of error to argue that Housholder believes JCF was required to supply him with blueprints of the proposed construction. We are, therefore, in agreement with the trial court that this argument is without merit.
 {¶ 29} Housholder assumed responsibility for all of the remodeling to make the existing storefront into a pizza parlor. JCF had no knowledge of what was required to complete the remodeling, or even, how Housholder intended to accomplish the remodeling. Therefore, it would not make sense for JCF to provide blueprints of the proposed remodeling.
 {¶ 30} Moreover, nothing in the reading of the lease indicates that JCF was required to provide Housholder with blueprints. Housholder attempts to rely on section 106.1 of the Ohio Building Code which provides: *Page 15 
 Before beginning the construction, erection, or manufacture of any building . . . the owner of that building . . . shall submit plans or drawings, specifications, and data prepared for the construction, erection, equipment, alteration, or addition . . . to the municipal, township, or county building department.
 {¶ 31} We note that this is an administrative provision, providing for the proper procedure for obtaining a building permit; it is not, a directive that it must always be the owner of a building who supplies plans or drawings of proposed construction. In the present case, although the lease is silent as to this element, the testimony of both Housholder and the Favors indicates that Housholder was responsible for all renovations of the storefront, as well as obtaining the necessary permits to accomplish those renovations. Therefore, there is no reason why JCF would be required to finance blueprints of the proposed construction
 {¶ 32} Housholder additionally argues that he was not the agent of JCF and therefore, could not be responsible for obtaining blueprints. However, Housholder need not be an agent of JCF in order to be responsible for obtaining the blueprints. JCF did not have a personal interest in putting a pizza parlor into the storefront. Housholder approached JCF concerning putting a pizza parlor into the existing storefront, representing that he would do all the work necessary to renovate the storefront. This was the testimony of both parties: that JCF would rent the storefront to Housholder, who would complete all necessary renovations to put in a pizza parlor. Therefore, the burden was on Housholder to obtain all *Page 16 
necessary documentation and obtain necessary permits in order to complete the renovations to accomplish his proposed use of the storefront. Accordingly, because the trial court had before it competent credible evidence that it was not the intent of the parties for JCF to fulfill Housholder's need for blueprints, Housholder's third assignment of error is overruled.
 Fourth Assignment of Error {¶ 33} In his fourth assignment of error, Housholder argues that the trial court erred in finding that he could not recover under a theory of unjust enrichment from JCF.
 {¶ 34} Unjust enrichment of a person occurs when he or she "has and retains money or benefits which in justice and equity belong to another." Hummel v. Hummel (1938), 133 Ohio St. 520, 528, 14 N.E.2d 923. A plaintiff must establish the following three elements to prove unjust enrichment: "`(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.'" Miller v. Keybank Natl. Assn., 8th Dist. No. 86327, 2006-Ohio-1725, at ¶ 43, quoting Hambleton v. R.G. BarryCorp. (1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298.
 {¶ 35} The trial court, in considering Housholder's claim for unjust enrichment found that: *Page 17 
 In this case, the parties entered in to a contract, a lease. The lease provides that the lessee, Housholder, may make alterations, additions, or improvements to the premises. The parties readily acknowledged in their testimonies that they had agreed for Housholder to make alterations, additions, and improvements to the premises. There is no provision in the lease for Housholder to be compensated for improvements he installed on the premises. If Housholder would have used the premises for the one year of the lease or the 12 month renewal period and then the lease had not been renewed he would have left with no claim for reimbursement for the improvements he made. Since this Court has determined it was Housholder who breached the lease, his claim for compensation must fail.
 Even under a theory of unjust enrichment, Housholder's claim must fail. Unjust enrichment is an equitable doctrine where a party has received a benefit under circumstances where it would be unjust or unfair for the party to retain the benefit without compensation. For the theory of unjust enrichment to apply, there must be some fault on the part of the benefited party. In this case, the fault lies with Housholder. Housholder commenced work in the premises before obtaining the proper building permits. If he had applied for the building permit before commencing construction, he would have quickly learned of his need for plans or blueprints for the construction. He could then have decided whether to bear the expense of obtaining those plans or terminating the lease. By terminating the lease, he would have limited his exposure to the unpaid rent for the remaining months of the lease. Instead, he moved forward without permits incurring expenses for which he now wants compensated.
 * * *
 Unjust enrichment only permits restitution for the reasonable value of the benefit incurred. The purpose of the doctrine is not to compensate for any loss or damages but to compensate him for the benefit he was conferred. In this case, there was little evidence of any value for the work performed. The only amount suggested in Housholder's brief is an amount of $5,000.00 based *Page 18 on the testimony of Favors. Favors testified when asked how much "work" was done on the premises, "Maybe $5,000.00." It was never made clear what was meant by that testimony. Even that testimony has little weight when Favors conceded later that he really didn't know and considering the testimony of Tony McAlexander of repairs needed to be done on the premises upon Housholder's vacating.
(internal citations omitted).
 {¶ 36} The trial court noted that unjust enrichment applies only where the party receiving the benefit is the breaching party and it would be unjust for that party to retain the benefit. In the present case, the trial court determined, and we agreed in our prior assignments of error, that Housholder breached the lease.
 {¶ 37} This Court also is in agreement that Housholder commenced construction before obtaining a building permit. Housholder could have limited his damages if he had complied with all building regulations and obtained a permit before commencing construction. Instead, by going forward with the renovations, Housholder increased his own damages.
 {¶ 38} Finally, we are unable to find any clear estimation in the record of what benefit Housholder conferred on JCF. Housholder provides no estimate of that benefit, only an amount for the material he claims he used to begin renovations. Furthermore, the trial court heard the testimony of Tony McAlexander, a carpenter who testified that because of Housholder's renovations, the ceiling, floors, and plumbing would need repaired before the storefront could *Page 19 
be rented out again. McAlexander estimated that these repairs would cost $4,500.00. (Tr.p. 329). Therefore, we cannot disagree with the trial court's conclusion that no proven benefit was conferred upon JCF to justify Housholder's recovery under a theory of unjust enrichment. Accordingly, Housholder's fourth assignment of error is overruled.
 Fifth Assignment of Error {¶ 39} In his fifth assignment of error, Housholder argues that the trial court erred in discharging his mechanics lien on the storefront. Housholder had filed a mechanic's lien in the amount of $14,200.27 on the storefront based on the amount Housholder spent on renovations prior to receiving the stop work order.
 {¶ 40} R.C. 1311.02 provides for the filing of a mechanic's lien where labor has been performed on personal property as follows:
 Every person who performs work or labor upon or furnishes material in furtherance of any improvement undertaken by virtue of a contract, express or implied, with the owner, part owner, or lessee of any interest in real estate, or the owner's, part owner's, or lessee's authorized agent, and every person who as a subcontractor, laborer, or material supplier, performs any labor or work or furnishes any material to an original contractor or any subcontractor, in carrying forward, performing, or completing any improvement, has a lien to secure the payment therefor upon the improvement and all interests that the owner, part owner, or lessee may have or subsequently acquire in the land or leasehold to which the improvement was made or removed. *Page 20 
 {¶ 41} In construing the application of R.C. 1311.02 to the present case, the trial court found that:
 R.C. 1311.02 authorizes the filing of a Mechanic's Lien based on a contract, ". . .express or implied . . ." This Court could have determined that the [sic] either under the express contract i.e., the lease, or the implied contract of unjust enrichment that Housholder was entitled to file the Mechanic's Lien.
 Since this Court has determined that Housholder is not entitled to recovery under either express or implied contract, the Mechanic's Lien must be discharged.
 {¶ 42} Cases interpreting R.C. 1311.02 have emphasized that mechanics liens can only properly attach where a contract exists. "[T]he statute requires by its terms, as a condition to the existence of a lien, that the labor be performed or material furnished by virtue of a contract, expressed or implied, with the owner * * *." Benes v. United States
(6th Cir. 1960), 276 F.2d 99. As the trial court correctly recognized, there was no contract for the renovations at issue in the case sub judice. The lease allowed Housholder to make the necessary renovations to open a pizza parlor in the storefront. However, the lease did not contract for the renovations to be performed for the benefit of JCF. Moreover, had Housholder completed no renovations, but continued to pay rent for the term of the lease, JCF would have no legal right against Housholder.
 {¶ 43} In order for the mechanic's lien to properly attach to the storefront, there had to be a contract for the renovations. The only contract present in this *Page 21 
case was the lease, which did not concern any renovations that Housholder would need to make. Accordingly, Housholder's fifth assignment of error is overruled.
 Sixth Assignment of Error {¶ 44} In his sixth assignment of error, Housholder argues that the trial court erred in finding that he knew or should have known that he needed to obtain a building permit before beginning construction on the storefront. In making this argument, Housholder reverts to his argument that he did not know blueprints were necessary to obtain the building permit. As previously noted, blueprints may or may not have been required to obtain the building permit. However, Housholder never completed the process to evaluate whether blueprints were necessary. Moreover, whether blueprints were necessary is immaterial to whether Housholder knew or should have known that he needed to obtain a building permit before commencing construction.
 {¶ 45} The trial court found that Housholder should have known that he needed to obtain a building permit before beginning work on the storefront. In finding that Housholder knew or should have known that he needed to obtain a building permit prior to beginning renovations on the storefront, the trial court relied on the testimony of Hart, who stated that she met with Housholder before he commenced renovations and notified him that he would need to contact the National Inspection Company in order to procure a building permit. Hart also *Page 22 
communicated to Housholder that he would need some plans for the renovations in order to procure a building permit.
 {¶ 46} Moreover, the trial court relied on Housholder's own conduct and his testimony to his conduct which indicated that he contacted the Department of Health repeatedly concerning what plans were necessary. Hart told Housholder he would need to contact the National Inspection Company to obtain more details about obtaining a permit. Housholder testified that he attempted to contact the National Inspection Company in reference to a building permit, but that no one returned his calls.
 {¶ 47} Finally, although Housholder argues his recollection should be more credible than the testimony of Hart and the Favors, the trial court was free to believe the testimony of Hart and the Favors, stating that Housholder had spoken to them concerning the need for a building permit but failed to apply with all of the necessary documentation. Accordingly, the trial court's finding that Housholder knew or should have known that he needed to obtain a building permit was supported by competent credible evidence and Housholder's sixth assignment of error is overruled. *Page 23 
 {¶ 48} Based on the foregoing, the April 15, 2008 Decision/Order Judgment Entry of the Court of Common Pleas of Shelby County is affirmed.
Judgment affirmed.
 PRESTON, J., concurs.
 ROGERS, J., concurs in judgment only. *Page 1