OPINION *Page 2 
{¶ 1} Defendant-Appellant Julie M. Erwin (nka Ward) ("Julie"), appeals from the April 1, 2008 Judgment Entry of the Marion County Court of Common Pleas, Family Division, finding that Julie failed to purge herself of the court's prior finding of contempt and sentencing her to 10 days in jail.
 {¶ 2} This matter involves grandparent visitation. Julie and Jeremy Erwin ("Jeremy") deceased, were married on July 25, 1998 and had one child together, Mercedes G. Erwin (nka Ward) ("Mercedes") (D.O.B. 1/31/00). On March 11, 2003 Julie filed a complaint for divorce in the Marion County Court of Common Pleas. On April 19, 2004 the court issued a Judgment Entry/Decree of Divorce wherein the court ordered that Julie was to be the residential parent of the parties' minor child and ordered that Jeremy shall have visitation privileges. Jeremy passed away in August, 2004.
 {¶ 3} On January 23, 2006 Deborah Erwin ("Deborah"), Jeremy's mother and Mercedes' paternal grandmother, filed a motion to be joined as a party and a motion to establish grandparent visitation pursuant to Ohio Revised Code section 3109.11. On February 24, 2006 the court issued a Magistrate's Decision and ordered that Deborah be joined as a third party defendant to the present action. On June 27, 2006 the court issued a Judgment Entry granting Deborah's motion for grandparent visitation. The court ordered that Deborah was to have visitation with *Page 3 
Mercedes on the first Saturday of every month commencing July 1, 2006 for six hours, and then for one 24-hour visit per month thereafter beginning August 5, 2006. No appeal was taken from this Judgment Entry.
 {¶ 4} On February 20, 2007 Deborah filed a motion for contempt requesting that the court find Julie in contempt of the court's June 27, 2006 Judgment Entry. Specifically, Deborah alleged that during the visitation exchange on February 3, 2007 Julie decided that Mercedes would no longer be able to visit with Deborah. On March 6, 2007 Julie filed a motion in opposition to Deborah's motion for contempt and alleged that on February 3, 2007 she presented Mercedes for visitation but Mercedes refused to get out of the car. On March 23, 2007 Deborah filed a second motion for contempt alleging that Julie denied her visitation with Mercedes on March 3, 2007.
 {¶ 5} On March 27, 2007 Julie filed a motion for temporary suspension of the court ordered visitation pending further psychological evaluation of Mercedes. In support of her motion, Julie alleged that she presented Mercedes for visitation on February 3 and March 3, 2007, but that on each occasion Mercedes refused to get out of the car. Additionally, Julie alleged that upon return from each of the prior visitations, Mercedes expressed her desire not to continue visiting with Deborah, that subsequent to each of the completed visits, Mercedes demonstrated behavior that was sullen and distant, and that after the January 2007 visit *Page 4 
Mercedes demonstrated "a more aggressive anger and adamance directed at not returning or ever seeing the paternal grandmother."
 {¶ 6} On April 13, 2007 the parties appeared in court for an evidentiary hearing regarding Deborah's motion for contempt and Julie's motion for temporary suspension of visitation. However, as there was not enough time allotted for the hearing, this matter was continued for further hearing. On April 19, 2007 Julie filed a motion requesting that the trial court conduct an in camera interview of Mercedes. On this date Julie also filed a motion requesting that the court appoint a Guardian Ad Litem ("GAL") for Mercedes. On April 26, 2007 the court ordered the appointment of a GAL to represent Mercedes' interests in the present case and on May 17, 2007 the court conducted an in camera interview of Mercedes.
 {¶ 7} On August 1, 2007 Deborah filed a third motion for contempt, alleging that Julie had violated the court's June 27, 2006 Judgment Entry by denying her visitation with Mercedes in April, May, and June 2007. On August 22, 2007 Deborah filed a fourth motion for contempt, alleging that Julie denied her visitation with Mercedes on August 4, 2007.
 {¶ 8} On September 13, 2007 the trial court conducted an evidentiary hearing on Deborah's motions for contempt and Julie's motion for temporary suspension of visitation as continued from the April 13, 2007 hearing, as well as *Page 5 
Deborah's August 1, 2007 motion for contempt. However, this matter was continued for further hearing on November 7, 2007.
 {¶ 9} On September 19, 2007 Deborah filed a fifth motion for contempt, alleging that Julie denied her visitation with Mercedes on September 1, 2007. On October 10, 2007 Deborah filed a sixth motion for contempt, alleging that Julie had denied her visitation with Mercedes on October 6, 2007. On October 30, 2007 Julie filed a motion for termination of the companionship and visitation order issued by the court on June 27, 2006, a motion for court-ordered psychological evaluations, and a motion for apportionment of GAL fees.
 {¶ 10} On November 7, 2007 the court conducted an evidentiary hearing on the parties' various motions and on December 5, 2007 issued a Judgment Entry wherein the court found Julie in contempt for failing to abide by the orders of the court. The court also ordered that Julie was responsible for paying Deborah's attorney's fees in the amount of $3,825 and for paying GAL fees in the amount of $1,870. However, the court ordered that Julie could purge herself of the contempt finding by paying Deborah's attorney's fees and court costs, and ordered that visits between Deborah and Mercedes were to resume every other Saturday from 10 a.m. until 2 p.m. with supervision by the GAL for the first two visits. The court set this matter for a purge/sentencing hearing on March 3, 2008. *Page 6 
 {¶ 11} On December 26, 2007 Julie filed a request for findings of fact and conclusions of law pursuant to Civ. R. 52 as well as a motion to vacate the court's December 5, 2007 Judgment Entry pursuant to Civ. R. 60. On December 28, 2007 Julie filed a notice of appeal of the December 5, 2007 Judgment Entry. On January 15, 2008 this court issued a Journal Entry dismissing Julie's appeal for lack of jurisdiction as the trial court's December 5, 2007 Judgment Entry was not a final appealable order as the penalty or sanction related to the finding of contempt had not yet been imposed. See Erwin v. Erwin (January 15, 2008), 3rd Dist. No. 9-07-66, unreported.
 {¶ 12} On January 7, 2008 the trial court issued a Judgment Entry denying Julie's request for findings of fact and conclusions of law. On February 5, 2008 Julie filed a notice of appeal of the January 7, 2008 Judgment Entry. On February 15, 2008 this court issued a Journal Entry dismissing Julie's appeal for lack of jurisdiction. Specifically, this court found that the January 7, 2008 Judgment Entry was not a final appealable order as "[t]he trial court's decision on whether findings of fact and conclusions of law are required as part of the finding of contempt is interlocutory and not subject to appeal" and "the extent of the sanction imposed . . . cannot be addressed on appeal until after judgment is rendered by the trial court after the `purge/sentencing' hearing." See Erwin v. Erwin (February 15, 2008), 3rd
Dist. No. 9-08-04, unreported. *Page 7 
 {¶ 13} On March 3, 2008 the trial court conducted a purge/sentencing hearing. On April 1, 2008 the court issued a Judgment Entry wherein the court determined, in relevant part, that Julie had failed to purge herself of the court's prior finding of contempt and sentenced Julie to 10 days in jail.
 {¶ 14} Julie now appeals, asserting six assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO FIND NONPARENTAL VISITATION STATUTES UNCONSTITUTIONAL AS THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION REQUIRES A SHOWING OF HARM OR THE POTENTIAL FOR HARM TO THE CHILD AS A CONDITION PRECEDENT TO GRANTING VISITATION WITH A NON-PARENT.
 ASSIGNMENT OF ERROR NO. 2 A CONFLICT EXISTS AS A MATTER OF LAW BETWEEN THE UNITED STATES SUPREME COURT DECISION IN TROXEL V. GRANVILLE (2000) 530 U.S. 57, AND OHIO REVISED CODE § 3109.051 AS A FIT PARENT'S DECISION REGARDING THE CARE, CUSTODY AND CONTROL IS NOT AFFORDED "SPECIAL WEIGHT" AS REQUIRED BY THE UNITED STATES CONSTITUTION.
 ASSIGNMENT OF ERROR NO. 3 THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS APPLICATION OF THE PROVISIONS OF OHIO REVISED CODE § 3109.11 AS THE MOTHER OF THE CHILD WOULD BE REQUIRED TO OTHERWISE VIOLATE CRIMINAL STATUTES TO FORCE HER CHILD TO ENGAGE IN THE UNSUPERVISED VISITS WITH THE PATERNAL GRANDMOTHER. *Page 8 
 ASSIGNMENT OF ERROR NO. 4 THE TRIAL COURT COMMITTED BOTH AN ERROR OF LAW AND ABUSE OF DISCRETION BY FINDING MOTHER, APPEALLANT WARD IN CONTEMPT AND AWARDING ATTORNEY FEES TO APPELLEE ERWIN.
 ASSIGNMENT OF ERROR NO. 5 THE TRIAL COURT COMMITTED PLAIN ERROR BY ADOPTING THE GUARDIAN AD LITEM'S REPORT DESPITE THE GUARDIAN AD LITEM'S BIAS AND FAILURE TO UNDERSTAND THE DUTY TO ADVOCATE FOR THE MINOR CHILD'S BEST INTEREST.
 ASSIGNMENT OF ERROR NO. 6 THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY EXCLUDING EVIDENCE OF AN AUDIO RECORDED STATEMENT OF DEBORAH ERWIN.
 Assignments of Error Nos. 1 and 2 {¶ 15} In her first assignment of error, Julie alleges that the trial court erred by failing to find Ohio's non-parental visitation rights statute unconstitutional pursuant to the Due Process Clause of the United States Constitution. In her second assignment of error, Julie alleges that the trial court erred by failing to find that a conflict exists as a matter of law between the United States Supreme Court decision in Troxel v. Granville (2000), 530 U.S. 57, 1205 S.Ct. 2054,147 L.Ed.2d 49 and R.C. 3109.051. As these assignments of error are substantially related, we shall address them together. However, prior to addressing the merits of Julie's *Page 9 
first and second assignments of error, we must first address some preliminary issues.
 {¶ 16} First, we note that R.C. 2721.12 requires a party challenging the constitutionality of a statute to serve a copy of the complaint to the attorney general so as to give the attorney general an opportunity to be heard. See In re Adoption of Miller, 3rd Dist. Nos. 8-02-22, 8-02-23, 2003-Ohio-718. A court lacks jurisdiction to render declaratory relief if the requirements in R.C. 2721.12 are not met.Cicco v. Stockmaster (2000), 89 Ohio St.3d 95, 100, 728 N.E.2d 1066. "When the Attorney General does not receive notice until after the trial court has rendered judgment or the case has been appealed, the party who is challenging a statute's constitutionality has failed to meet the mandates of R.C. 2721.12." Id. See, also, Harmon v. Adams, 3rd Dist. No. 14-00-33, 2001-Ohio-2106. In the present case, Julie failed to provide the attorney general with any notice of a constitutional challenge and therefore failed to comply with the requirements of R.C. 2721.12.
 {¶ 17} Next, we note that Julie never raised the issue of the constitutionality of R.C. 3109.051 at the trial court level. A party's failure to raise an issue at the trial court level acts as a waiver of the issue on appeal. State ex rel. Zollner v. Indus. Comm. (1993),66 Ohio St.3d 276, 278, 611 N.E.2d 830 citing State ex rel. Gibson v.Indus. Comm. (1988), 39 Ohio St.3d 319, 530 N.E.2d 916. *Page 10 
Additionally, we note that Julie never filed an appeal of the trial court's June 27, 2006 Judgment Entry granting Deborah's motion for grandparent visitation.
 {¶ 18} As Julie failed to comply with R.C. 2721.12 and failed to challenge the constitutionality of R.C. 3109.051 at the trial court level, we will not consider the constitutionality of R.C. 3109.051 as requested by Julie in her first and second assignments of error. Accordingly, Julie's first and second assignments of error are overruled.
 Assignment of Error No. 3 {¶ 19} In her third assignment of error, Julie alleges that the trial court erred in its application of R.C. 3109.11 and R.C. 3109.051 and imposed upon her an obligation to violate criminal statutes.
 {¶ 20} As a preliminary matter, we note that Julie failed to raise this issue at the trial court level. As previously noted, a party's failure to raise an issue at the trial court level acts as a waiver of the issue on appeal. State ex rel. Zollner v. Indus. Comm. (1993),66 Ohio St.3d 276, 278, 611 N.E.2d 830 citing State ex rel. Gibson v.Indus. Comm. (1988), 39 Ohio St.3d 319, 530 N.E.2d 916. However, even considering the merits of Julie's contentions, we find that the trial court did not err, nor did it require or attempt to require Julie to violate criminal statutes.
 {¶ 21} On appeal, Julie alleges that requiring her compliance with the trial court's order granting Deborah visitation with Mercedes would, in effect, force her *Page 11 
to violate criminal statutes such as R.C. 2919.22(A) (Endangering Children) and R.C. 2919.25 (Domestic Violence). However, our review of the record reveals that Julie's argument that her only choice was to defy the trial court's order or violate criminal statutes, is without merit as substantial testimony was presented to the trial court which clearly disproves this argument.
 {¶ 22} During the September 13, 2007 hearing the trial court heard testimony from Dr. Don McIntire ("McIntire"), a psychologist licensed in Ohio. McIntire testified that he saw Mercedes as a patient for two or three sessions in 2004 and approximately eight times in 2007. McIntire testified that Julie presented him with a number of ideas to help implement visitation between Mercedes and Deborah. McIntire testified that Julie's suggestions were "very positive ideas" and included Julie accompanying Mercedes to the visits so the three of them would be together, Julie going over to say hello to Deborah with Mercedes in tow, involving Deborah in therapy sessions, and providing Deborah with information regarding Mercedes' sports and other extracurricular activities. However, McIntire testified that he did not know whether Julie had, in fact, implemented any of these suggestions.
 {¶ 23} Deborah also testified during the September 13, 2007 hearing regarding the suggestions testified to by Dr. McIntire. Deborah testified that Julie never shared Mercedes' extracurricular activities schedule with her. Deborah also *Page 12 
testified that she was never contacted by Dr. McIntire regarding joint counseling sessions.
 {¶ 24} Additionally, we would note that during the November 7, 2007 hearing the GAL testified that she sent a letter to the parties and their attorneys in an effort to set up additional supervised visits. The GAL testified that Deborah responded to her letter but Julie did not. The GAL also testified that she was unaware of any efforts that Julie made to try to arrange counseling.
 {¶ 25} Based on the foregoing, it is clear that Julie did not actively engage or otherwise encourage Mercedes to participate in the court-ordered visitation with Deborah. However, it is just as clear that Julie's only option was not, as she argues, to either defy the trial court's order or violate criminal statutes as the record clearly reflects that Julie was aware of various options to facilitate visitation; she simply opted to not follow through with any of those options. Accordingly, Julie's third assignment of error is overruled.
 Assignment of Error No. 4 {¶ 26} In her fourth assignment of error, Julie alleges that the trial court abused its discretion by finding her in contempt of the court's prior orders, and that the trial court's decision awarding attorney fees to Deborah was contrary to law. *Page 13 
 {¶ 27} An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id. However, where a trial court's order is based on a misconstruction of law, it is not appropriate for a reviewing court to use an abuse of discretion standard. Castlebrook, Ltd. v.Dayton Properties Ltd. Partnership (1992), 78 Ohio App.3d 340, 346,604 N.E.2d 808. In determining pure questions of law, an appellate court may substitute its judgment for that of the trial court, since an important function of appellate courts is to resolve disputed propositions of law.Id.
 {¶ 28} In the first part of her fourth assignment of error, Julie alleges that the trial court abused its discretion in determining that she failed to abide by the court's previous orders and holding her in contempt of court.
 {¶ 29} Our review of the record reveals that the trial court conducted multiple hearings on Deborah's various motions for contempt. Throughout these hearings, the trial court had the opportunity to observe and evaluate the testimony of the parties and to determine the credibility of the parties. Credibility is always an issue, and it is for the finder of fact to impartially determine if a witness is credible and the amount of weight to be afforded to that particular witness' *Page 14 
testimony. Johnson v. Pierce, 3rd Dist. No. 14-07-14,2007-Ohio-6234 citing State v. Bayer (1995), 102 Ohio App.3d 172, 182,656 N.E.2d 1314. Additionally, we note that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. JC F Investments v. Housholder, et al.
3rd Dist. No. 17-08-11, 2008-Ohio-5313 citing SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 30} At the April 13, 2007 hearing testimony was presented that established that Deborah was granted visitation with Mercedes pursuant to the trial court's June 27, 2006 Judgment Entry. Testimony was also presented demonstrating that the August, September, October, and November 2006 visits between Deborah and Mercedes went well. During the January 2007 visitation, Deborah and Mercedes worked on a scrapbook that included pictures of Mercedes and her deceased father. However, after Mercedes returned home from that visit, Julie contacted Deborah and advised she was upset about the scrapbook. Since that time there have been no visitations between Deborah and Mercedes.
 {¶ 31} Deborah testified that the February and March 2007 visits did not occur. Deborah testified that on each of these missed visits, she and Julie met at the visitation exchange location, but that Julie told her that Mercedes didn't want to go. Deborah also testified that she believes it is "Julie's responsibility to make *Page 15 
sure that the child comes for the visitations" and that "she [Julie] is the controlling parent of this child." Additionally, Deborah testified that it was her understanding that Julie "is supposed to encourage Mercedes to come to these visits" but that Julie hasn't been doing so.
 {¶ 32} At the September 13, 2007 hearing Deborah testified that she did not get a visit with Mercedes in April, May, June or August 2007.[1] The trial court also heard testimony from the GAL who testified that it was not up to Mercedes as to whether or not she visits with Deborah as "it is not up to a child whether they do or do not visit."
 {¶ 33} During the November 7, 2007 hearing the trial court heard additional testimony from the GAL who testified that she believed it is in Mercedes' best interest to have a connection to her biological father's family and that Deborah is an appropriate connection. The GAL also testified that she was not aware of any efforts Julie has made to facilitate any visits with the exception of one visit that was set up by the GAL.
 {¶ 34} Julie testified that court-ordered visits did not occur between Mercedes and Deborah on any of the dates as alleged in Deborah's motions for contempt. Julie testified that she respects the court's June 27, 2006 order mandating these visits occur, and in support of that statement, testified that she has *Page 16 
shown up for all of the visits for over six months, "it is just that she's [Mercedes] refusing to get out of the car." Julie testified that Mercedes does not wish to visit with Deborah and that Mercedes is afraid of Deborah. The testimony presented to the trial court also demonstrated that Julie declined to force the issue of visitation with Mercedes.
 {¶ 35} On December 5, 2007 the trial court issued a Judgment Entry and specifically found as follows:
 Mother denied grandmother's court ordered visitation since February 2007. Mother taking matters into her own hands unilaterally terminated grandmother's visitation in contravention of the court order. The Court finds that her actions are a willful failure to abide by the court's order. * * *
 The Court had the opportunity to observe the parties throughout the trial. Over the course of the years in which this Court has heard this case, the Court has noticed a rising animosity by the mother towards the grandmother. * * *
 Finally, throughout the process the mother continued to disobey the order of the Court knowing full well that the Court Orders remained in full force and effect throughout the process. Therefore, the Court finds that the mother is in contempt for failing to abide by the orders of the Court.
 {¶ 36} Based upon our review of the record, we find that there was substantial testimony and evidence presented to the court to support the trial court's finding that Julie did not participate in the court-ordered visitation sessions with Deborah and therefore failed to abide by the court's previous orders. *Page 17 
Accordingly, we find that the trial court did not abuse its discretion in finding Julie in contempt for failing to abide by the orders of the court.
 {¶ 37} Turning our attention to the second part of Julie's fourth assignment of error, Julie argues that the trial court's decision to award attorney fees pursuant to R.C. 3105.73 was contrary to law, and that attorney fees could only have been awarded pursuant to R.C. 3109.051(K)
 {¶ 38} R.C. 3105.73 provides, in relevant part, as follows:
 (B) In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets. (Emphasis added).
R.C. 3109.051(K) provides as follows:
 If any person is found in contempt of court for failing to comply with or interfering with any order or decree granting parenting time rights issued pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights issued pursuant to this section, section 3109.11 or 3109.12 of the Revised Code, or any other provision of the Revised Code, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt, and may award reasonable compensatory parenting time or visitation to the person whose right of parenting time or *Page 18 visitation was affected by the failure or interference if such compensatory parenting time or visitation is in the best interest of the child. Any compensatory parenting time or visitation awarded under this division shall be included in an order issued by the court and, to the extent possible, shall be governed by the same terms and conditions as was the parenting time or visitation that was affected by the failure or interference.
 {¶ 39} Our review of the record reveals that the Marion County Court of Common Pleas, Family Division initially exercised jurisdiction in this case on March 11, 2003 when Julie filed a complaint for divorce from Mercedes' father Jeremy. After Jeremy passed away, his mother Deborah filed a motion to be joined as a party and a motion to establish grandparent visitation under this same case number which were subsequently granted by the trial court.
 {¶ 40} On November 2, 2007 Deborah filed a motion for attorney fees and the trial court heard testimony regarding this motion during the November 7, 2007 hearing. Deborah's attorney elicited testimony from Dustin J. Redmond, Jr. ("Redmond"), an attorney licensed to practice in Ohio. Redmond testified that he has practiced in the field of family law for over 30 years and has previously filed and defended contempt actions. Redmond testified that the hourly rate of $125.00 charged by Deborah's attorney is on "the low end" of the normal and customary rate charged by attorneys in the Marion, Ohio area. Additionally, Redmond testified that he had reviewed Deborah's attorney's fees and believed that these fees were "reasonable given the nature of the case and the proceedings." *Page 19 
 {¶ 41} In its December 5, 2007 Judgment Entry the trial court determined, in relevant part, as follows:
 The Defendant, grandmother, seeks attorney's fees pursuant to § 3105.73(B). With respect to the conduct and delay caused by the Plaintiff, the unilateral denial of visitation, as well as the continued denial of visitation despite the Court's continuing order. The Court also notes that as part of that conduct the mother's testimony that she will not require the child to do what she alleges she does not want to do, despite the order of the Court. All of these actions required the grandmother to file motions repeatedly to enforce the order of the Court escalating the costs of litigation to the grandmother.
 A review of the fees by the Court and the expert testimony provided at trial allows the Court to find that the fees are reasonable and necessary. The Court notes that the parties specifically stipulated that the fees pursuant to Defendant's Exhibit 1 were both reasonable and necessary. The Court finds that Defendant's Exhibit 2 is also reasonable except for fees entered for November 2, 2007, in the amount of $225.00. These fees may have been incurred for other than the contempt motion issue. The Court finds the sum of $3,825.00 for grandmother's fees in representing and presenting her motions for contempt are reasonable and necessary. The Court further finds based upon the factors contained in § 3105.73(B) that the Plaintiff shall be responsible for the payment of attorneys' fees.
 {¶ 42} We note that contrary to the trial court's statement that "[t]he Defendant, grandmother seeks attorney's fees pursuant to § 3105.73(B)," our review of the record reveals that Deborah did not actually seek attorney fees pursuant to a specific section of the Revised Code. However, we find that Deborah could have sought attorney's fees pursuant to R.C. 3105.73(B) because her motion for attorney's fees was a post-decree motion that clearly arose out of *Page 20 
and was filed in the same case and under the same case number as the original divorce action between Julie and Jeremy so as to comply with the requirements of R.C. 3105.73(B). Additionally, we find no authority mandating that the attorney's fees in the present case be awarded pursuant to R.C. 3109.051(K) as opposed to R.C. 3105.73(B), and we note that Julie has not provided this court with any such authority.[2]
Furthermore, we note that the trial court's December 5, 2007 Judgment Entry also specifically cited Julie's conduct and the conduct of her attorney in awarding Deborah her attorney's fees, as allowed for in R.C. 3105.73(B).
 {¶ 43} Accordingly, we find that the trial court did not err in awarding Deborah attorney fees pursuant to R.C. 3105.73. Based on the foregoing, Julie's fourth assignment of error is overruled.
 Assignment of Error No. 5 {¶ 44} In her fifth assignment of error, Julie alleges that the trial court erred by adopting the GAL's report. Specifically, Julie alleges that the trial court committed plain error by adopting and relying on the GAL's report after the GAL demonstrated bias during the hearings in this matter and failed to understand her *Page 21 
duty to advocate for the minor child's best interest.
 {¶ 45} We note that the Ohio Supreme Court has discussed the application of the plain error doctrine in civil cases, finding that, "[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 679 N.E.2d 1099, at syllabus. "A `plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." Schade v.Carnegie Body Co. (1982), 70 Ohio St.2d 207, 209, 436 N.E.2d 1001.
 {¶ 46} Our review of the record reveals that on April 26, 2007 the trial court entered an order appointing a GAL to represent Mercedes' interests in the present case. The record also reveals that the GAL testified at length during the court's September 13, 2007 and the November 7, 2007 hearings.
 {¶ 47} Specifically regarding the allegation of bias by the GAL, Julie alleges that the GAL had a conflict of interest and was biased in Deborah's favor because the GAL's mother presently resides in a retirement home managed by *Page 22 
Deborah. Julie also alleges that a conflict of interest occurred because of the landlord-tenant relationship between Deborah and the GAL's mother.
 {¶ 48} Our review of the record reveals that during the November 7, 2007 hearing, the following exchange occurred on cross-examination between Julie's attorney and the GAL:
 Mr. Hamilton: Uh, you stated that you had some knowledge of the person of Deborah Erwin prior to your involvement in this case. Is that true?
 Ms. Hypes: That's correct.
 Mr. Hamilton: Would you elaborate what you knew about Deborah Erwin?
 Ms. Hypes: I know that she is the manager . . . I guess you would call her the manager. . . . It's a . . . apartment complex and my mother lives in that apartment complex.
 Mr. Hamilton: How long has your mother lived in that apartment complex?
 Ms. Hypes: Oh, twenty some years.
 Mr. Hamilton: How long, do you understand, has Ms. Erwin worked at that complex?
 Ms. Hypes: I have no idea.
 Mr. Hamilton: Do you have any knowledge of your mother and Ms. Erwin having any kind of relationship?
 Ms. Hypes: Other than there's certain information that I believe, uh, because of the type of complex that it is certain information which uh, Ms. Erwin has to compile on each person who lives there. *Page 23 
 * * *
 Mr. Hamilton: Have you ever spoken to Ms. Erwin prior to
 your interaction with her at your office?
 Ms. Hypes: I have probably said hello.
 Mr. Hamilton: How many times have you said hello?
 Ms. Hypes: I really couldn't tell you. Probably maybe, two, three times.
 Mr. Hamilton: So in the approximate twenty years that your mother has been there, you have seen Ms. Erwin at least two times? Are there any more than the two times that you've seen her to say hello?
 Ms. Hypes: I could have passed her in the hall, but . . .
 Mr. Hamilton: Did you ever deliver the rent check?
 Ms. Hypes: No.
(See Transcript ("Tr.") of Nov. 7, 2007 Hearing, pp. 81-83).
 {¶ 49} Based on the foregoing, and the fact that, at the most, the GAL may have said hello to Deborah two or three times in a 20 year period and may have passed Deborah in the hall, we find that the GAL did not have a conflict of interest in the present case and was not otherwise biased in Deborah's favor. We also find that Julie's allegation that a landlord-tenant relationship existed between Deborah and the GAL's mother completely without merit. No evidence was presented to the trial court regarding a landlord-tenant relationship and Julie fails to cite to any authority to support this argument. *Page 24 
 {¶ 50} Regarding her assertion that the GAL failed to understand her duty to advocate for Mercedes' best interests, Julie alleges that the GAL testified that "her goals were to witness interaction between the parties, determine if Appellant [Julie] encouraged companionship and to begin companionship visits." (See Julie's brief, p. 29). Additionally, Julie asserts that only with prompting did the GAL recognize her duty to assist the court in determining Mercedes' best interests.
 {¶ 51} Our review of the record reveals that the GAL testified that she has acted as a GAL in approximately 100 cases over the past 14-15 years. The GAL testified that she met with Mercedes three separate times. Specifically the GAL testified that the first time they met it was just her and Mercedes, but Julie was present during the second meeting, and both Deborah and Julie were present during the third meeting. The GAL also testified that she felt fairly comfortable with her impressions of Mercedes when drafting her report.
 {¶ 52} Additionally, we note that the statement cited by Julie in her brief regarding the GAL's goals was related to a specific occasion and her role as a supervising party for visitations between Julie, Mercedes and Deborah. We also note that earlier in the same cross-examination of the GAL by Julie's attorney, the GAL specifically testified that "[m]y responsibility is to look at what is in the best interest of the child . . ." (Tr. Sept. 13, 2007 Hearing p. 134). Therefore, we find *Page 25 
that contrary to Julie's allegations, the GAL clearly understood her duty to advocate for Mercedes' best interests and performed her duties in a competent and credible manner.
 {¶ 53} Based on the foregoing, we find nothing in the record to suggest that the trial court's adoption of the GAL's recommendation that visitation between Deborah and Mercedes would be in the best interest of Mercedes seriously affected the basic fairness, integrity, or public reputation of the judicial process in this case so as to support a finding of plain error. Accordingly, Julie's fifth assignment of error is sustained.
 Assignment of Error No. 6 {¶ 54} In her sixth assignment of error, Julie alleges that the trial court abused its discretion by excluding evidence of an audio recording offered by Julie. Specifically, Julie argues that the audio recording provided evidence to the trial court that Deborah discouraged Mercedes from participating in the court-ordered visitation and that the exclusion of this evidence was highly prejudicial to Julie.
 {¶ 55} Trial courts have broad discretion in determining whether to admit or exclude evidence. Deskins v. Cunningham, 3rd
Dist. No. 14-05-29, 2006-Ohio-2003, ¶ 53 citing Huffman v. Hair Surgeon,Inc. (1985), 19 Ohio St.3d 83, 482 N.E.2d 1248. Accordingly, a trial court's ruling on the admissibility of evidence will not be disturbed on appeal absent an abuse of discretion. Id. An abuse of *Page 26 
discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court.Id.
 {¶ 56} Our review of the record reveals that at the November 7, 2007 hearing, Julie testified about the events that occurred during the August 2007 visitation. Specifically, Julie testified that she met Deborah for the visitation as scheduled and that Deborah rolled down her car window and asked if Mercedes was going to the visitation. Julie testified that she told Deborah that Mercedes was crying and saying she wouldn't get out of the car. Julie testified that Deborah got out of her car and came around to Mercedes' window to talk to her. Julie testified that Deborah "made a comment about how cute her (Mercedes) hair bow looked and asked if she wanted to come spend the night." Julie testified that when Mercedes refused, Deborah said "do you want to just come and swim for awhile" and when Mercedes refused again, Deborah said "if you don't want to go with grandma you don't have to honey." (Nov. 11, 2007 Tr. pp. 231-232).
 {¶ 57} Julie also testified that she made an audio recording of the August 2007 visitation which her attorney referenced to the trial court as Exhibit D. The court then inquired of Deborah's attorney as to whether he had had an opportunity *Page 27 
to hear the recording. Deborah's attorney advised the court that he heard a small portion of the recording, but was concerned about the lack of clarity and advised the court that it "is very difficult to hear what anyone is saying." Julie's then provided the court with additional foundation and testified that she hid the tape recorder in her sweatshirt and testified that Mercedes did not know that the conversation was being recorded. Additionally, Julie testified that she believed the audio recording was an accurate representation of what took place during the August 2007 visitation and that she believed the recording would aid the court in understanding her position.
 {¶ 58} Julie's attorney then moved to admit the audio recording into evidence as Exhibit D. However, Deborah's attorney objected to the admission and advised the court that he still had concerns with the recording as the only person who could be heard on the recording was Julie. Julie's attorney then played the audio recording, but was stopped by the court when the Judge stated: "I think that is enough Mr. Hamilton. I don't think that is of sufficient quality to verify anyone's particular voice there. I was unable to distinguish voices, word, conversation, um sustained on the objection." (Nov. 7, 2007 Tr. pp. 236-237).
 {¶ 59} Our review of the record reveals that Julie specifically testified regarding the substance of the quoted language contained on the excluded audio recording immediately before the recording was offered into evidence. *Page 28 
Additionally, we note that during the September 13, 2007 hearing, Deborah also testified regarding the August 2007 visitation wherein she testified as follows: "I said she [Mercedes] did not have to go and stay all night with me. If that was the problem why she didn't want to go just to come for a couple hours that was okay, that we would go swimming or something if she didn't want to come and stay all night." (See Sept. 13, 2007, Tr. p. 88). Therefore, contrary to Julie's assertions, we find that the exclusion of the audio recording was not "highly probative" evidence and further find that the exclusion of the audio recording was not "critically prejudicial" as Julie alleges, and was in fact, harmless, as the excluded facts were previously testified to by both Julie and Deborah.
 {¶ 60} Accordingly, we find that the trial court did not abuse its discretion by excluding the audio recording offered by Julie. Therefore, Julie's sixth assignment of error is overruled.
 {¶ 61} Based on the foregoing, the April 1, 2008 Judgment Entry of the Marion County Court of Common Pleas, Family Division finding that Julie failed to purge herself of the court's prior finding of contempt and sentencing her to 10 days in jail is affirmed.
Judgment Affirmed
 PRESTON, P.J., concurs.
[1] Deborah testified that she did not appear for the July 2007 visitation because she forgot, and that was why no contempt action was filed with regard to the July 2007 visitation.
[2] Furthermore, we note that Julie's argument on appeal that the trial court should have considered R.C. 3109.401 and committed an error of law by failing to do so, is without merit. In awarding visitation to Deborah and subsequently reviewing its grant of visitation, the trial court was required to consider the factors enumerated in R.C. 3109.011, and, pursuant to this section, was required to consider the factors contained in R.C. 3109.051. Our review of these sections reveals no mention of a trial court's obligation to consider R.C. 3109.041. *Page 29