[Cite as *Tretola v. Tretola*, 2014-Ohio-5484.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

REBECCA L. TRETOLA,

    PLAINTIFF-APPELLEE,               CASE NO.  8-14-12

    v.

ROBERT J. TRETOLA,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Family Court – Domestic Relations Division
Trial Court No. DR 12-09-0150

**Judgment Affirmed**

**Date of Decision:  December 15, 2014**

APPEARANCES:

    *Robert J. Tretola,*  Appellant

    *Sheila E. Minnich*  for Appellee

Case No. 8-14-12

**PRESTON, J.**

{¶1} Defendant-appellant, Robert J. Tretola ("Robert"), pro se, appeals the May 27, 2013 judgment entry of the Logan County Court of Common Pleas, Family Court-Domestic Relations Division, granting the plaintiff-appellee, Rebecca L. Tretola ("Rebecca") divorce from Robert. For the reasons that follow, we affirm.

{¶2} The facts relevant to this appeal are as follows. Robert and Rebecca were married on June 9, 1995. (Doc. No. 1). Rebecca filed a complaint for divorce on September 17, 2012. (*Id.*). No children were born as issue of this marriage. (*Id.*).

{¶3} At the same time Rebecca filed her complaint for divorce, she filed three motions requesting that the trial court issue three ex parte orders: ordering Robert to designate her as the sole beneficiary on his life-insurance policy with Lincoln National because Robert changed the beneficiary to his daughter on September 7, 2012; preventing Robert from withdrawing money from the "6058"[1] Scottrade account; and ordering Robert to return coins valued between $15,000 and $20,000 that he removed from the marital home on or around September 7, 2012. (Doc. Nos. 7, 8, 9). Rebecca also filed motions requesting that the trial

---

[1] The record reflects that the couple maintained three Scottrade accounts—accounts "6057," "6058," and "6059." (Oct. 30, 2013 Tr. at 106-107). The "6057" account was in Rebecca's name, the "6059" account was in both Robert's and Rebecca's names, and Rebecca and Robert contributed money to the "6058" account, which was in Robert's name. (*Id.* at 107, 111-112).

-2-

court issue a temporary restraining order against Robert and for Robert to pay temporary spousal support to Rebecca. (Doc. Nos. 10, 11).

{¶4} That same day, the trial court issued the three ex parte orders requested by Rebecca. (Sept. 17, 2012 JE, Doc. Nos. 15, 16, 17). The trial court issued temporary restraining orders against Robert and Rebecca on November 5, 2012. (Nov. 5, 2012 JE, Doc. No. 28).[2]

{¶5} On December 4, 2012, Robert filed a motion for leave to file his answer, filed his answer, and filed his counterclaim. (Doc. Nos. 32, 33, 36). The trial court granted Robert's motion for leave to file his answer on December 7, 2012. (Dec. 7, 2012 JE, Doc. No. 37). Rebecca filed her answer to Robert's counterclaim on January 2, 2013. (Doc. No. 43).

{¶6} On December 28, 2012, Robert filed a motion requesting that the trial court partially release him from the restraining order and permit him to withdraw monies from the "6058" Scottrade account for living expenses. (Doc. No. 42).

{¶7} On January 28, 2013, Rebecca filed a motion for an ex parte order permitting her to remove household goods from the marital home to allow her to relocate from the marital home. (Doc. No. 53). The trial court issued an ex parte order that same day granting Rebecca's request to remove household goods from the marital home. (Jan. 28, 2013 JE, Doc. No. 54). Robert filed a motion

---

[2] The record reflects that Robert filed a motion requesting a temporary restraining order on November 19, 2012. (Doc. No. 29).

objecting to Rebecca's request to remove household goods from the marital home on February 4, 2013. (Doc. No. 57).

{¶8} After a hearing on February 6, 2013, the magistrate issued his temporary orders. (Feb. 25, 2013 JE, Doc. No. 61). The magistrate's temporary orders ordered Robert to pay Rebecca temporary spousal support in a lump sum of $20,000 within 30 days of the order, to pay for all of Rebecca's medical expenses, and to pay for all debts and obligations associated with the marital home. (*Id.*). The magistrate's temporary orders permitted Robert to withdraw $40,000 from the "6058" Scottrade account and ordered him to pay $20,000 of that $40,000 to Rebecca to satisfy the temporary spousal support that the magistrate ordered him to pay her. (*Id.*). The temporary orders also ordered Robert to submit documentation to the trial court that he complied with the court's ex parte order requiring him to name Rebecca as the sole beneficiary on his Lincoln National life-insurance policy. (*Id.*).

{¶9} On February 11, 2013, Robert filed "Defendant's Support and Clarification of Positions at Conference/Hearing on 'Temporary Orders.'" (Doc. No. 58). On February 19, 2013, Robert filed a motion requesting Rebecca and her attorney pay late fees associated with the mortgage and property taxes of the marital property. (Doc. Nos. 59, 60). On February 28, 2013, Robert filed a

motion requesting a change in venue. (Doc. No. 66). On March 1, 2013, Robert filed his objections to the magistrate's temporary orders. (Doc. No. 67).

{¶10} On April 9, 2013, Rebecca filed a response to Robert's objections. (Doc. No. 68). Also on April 9, 2013, Rebecca filed a motion requesting that the trial court issue an ex parte order that the marital home be listed for sale. (Doc. No. 70).

{¶11} On April 12, 2013, Robert filed "Defendant's Reply to Plaintiff's Complaint that Defendant is in Contempt of Court" and admitted that he did not comply with the magistrate's temporary orders because he did not agree with them. (Doc. No. 71).[3] On April 15, 2013, Robert filed an objection to Rebecca's motion requesting that the trial court order that the marital home to be listed for sale. (Doc. No. 72).

{¶12} Also on April 15, 2013, Rebecca filed a motion to dismiss Robert's objections to the magistrate's orders. (Doc. No. 70).

{¶13} On May 29, 2013, Robert filed a "Pre-Trial Motion for 'Summary Judgment on the Issue of Plaintiff's Submitting Two (2) False Affidavits' in Support of Plaintiff's 'Motion to Restrain Defendants [sic] Retirement Account.'" (Doc. No. 77).

---

[3] The record does not reflect that Rebecca filed a complaint alleging that Robert was in contempt of court for failing to comply with the magistrate's temporary orders. Instead, the record reflects that Rebecca intended to file a contempt motion after the trial court ruled on Robert's objections to the magistrate's temporary orders. (*See* Aug. 2, 2013 Tr. at 27).

{¶14} On June 24, 2013, the trial court concluded that a conflict of interest existed for all Logan County judges based on complaints filed by Robert against the trial court in state and federal court, and the case was assigned to a visiting judge. (June 24, 2013 JE, Doc. No. 79).

{¶15} On June 27, 2013, Rebecca filed a second motion requesting that the trial court issue an ex parte order ordering that the marital home be listed for sale. (Doc. No. 83). Also on June 27, 2013, Rebecca filed a motion requesting that the trial court issue an ex parte order allowing her to withdraw $20,000 from her life insurance policy because Robert refused to comply with the magistrate's temporary orders requiring him to pay her spousal support. (Doc. No. 84).

{¶16} On July 3, 2013, Robert filed a "Motion for Summary Judgment or Final Divorce Decree." (Doc. No. 85). Also on July 3, 2013, Robert filed a response to Rebecca's motions requesting ex parte orders and a motion to sanction Rebecca and her attorney. (Doc. No. 86).

{¶17} The trial court denied Rebecca's requests for ex parte orders and, instead, scheduled the issues for a hearing. (July 9, 2013 JE, Doc. No. 90).

{¶18} On July 19, 2013, Robert filed a motion requesting that the trial court release the "6058" Scottrade account from the restraining order. (Doc. No. 92).

{¶19} After a hearing on August 1, 2013, the trial court: overruled Robert's objections to the magistrate's temporary orders; ordered Robert to pay

$30,000 to Rebecca from the "6058" Scottrade account within seven days of the judgment entry; granted Robert the authority to remove $30,000 from the "6058" Scottrade account for living expenses, inclusive of any monies he already removed from that account; ordered Robert to submit documentation to the trial court of his compliance with the judgment entry and to submit documentation of any monies withdrawn from the "6058" Scottrade account. (Aug. 8, 2013 JE, Doc. No. 97).

{¶20} On August 13, 2013, Robert filed an objection to the trial court's August 8, 2013 judgment entry. (Doc. No. 100). On August 16, 2013, Robert filed an appeal with this court. (Doc. No. 102). On September 3, 2013, this court dismissed Robert's appeal for lack of a final, appealable order. (Sept. 3, 2013 JE, Doc. No. 108).

{¶21} On August 27, 2013, Rebecca filed a motion requesting that Robert be held in contempt of court for failing to comply with the trial court's August 8, 2013 judgment entry and prior orders of the trial court. (Doc. No. 105). On August 30, 2013, Robert filed a response to Rebecca's motion requesting that he be held in contempt of court, alleging that he could not comply with the trial court's order because "Scottrade will not release the money ordered by the court." (Doc. No. 107).

{¶22} On September 18, 2013, Robert filed a motion requesting that the trial court order Scottrade to release the monies the trial court previously

authorized him to withdraw. (Doc. No. 109). On October 15, 2013, Robert filed a motion requesting that the trial court permit him to withdraw additional monies from the "6058" Scottrade account for living expenses and expert-witness fees. (Doc. No. 113). On October 30, 2013, a trial to the court was held. (Oct. 30, 2013 Tr. at 1).

{¶23} On November 1, 2013, Robert filed a notice of appeal with this court. (Doc. No. 126). On November 15, 2013, this court dismissed Robert's appeal because he failed to attach the final order he sought to have reviewed on appeal and because the record did not reflect that the trial court recently filed a final order or any order subject to appeal. (Nov. 15, 2013 JE, Doc. No. 131).

{¶24} On January 31, 2014, Rebecca filed a motion requesting that the trial court release $10,000 from the "6058" Scottrade account for the upkeep and preservation of the marital home during the pendency of this case. (Doc. No. 136). On February 10, 2014, Robert filed a memorandum in opposition to Rebecca's motion. (Doc. No. 141).

{¶25} On February 13, 2014, the trial court issued an opinion and findings and ordered Rebecca's counsel to "prepare an appropriate entry in conformity with [its] findings." (Feb. 13, 2014 JE, Doc. No. 142). On February 21, 2014, Robert filed an objection to the trial court's February 13, 2014 opinion and findings. (Doc. No. 147). That same day, Robert also filed "Defendants [sic] Testimony

Regarding Missing Time From Court Tape Recorder Required by the Court" and a "Motion to Have the Tape Recording of the Divorce Trial Held on October 30 2013 to be Forensically Examined to Verify its Contents." (Doc. Nos. 148, 149). On February 24, 2014, Robert filed a correction and amendment to his objection to the trial court's February 13, 2014 opinion and findings. (Doc. No. 151).

{¶26} On February 27, 2014, Robert filed his notice of appeal of the trial court's February 13, 2014 opinion and findings. (Doc. No. 152). On March 26, 2014, this court dismissed Robert's appeal for lack of a final, appealable order since the trial court's February 13, 2014 opinion and findings made only findings regarding how the parties' claims should be resolved. (Mar. 26, 2014 JE, Doc. No. 156).

{¶27} On April 3, 2014, the trial court authorized Rebecca to receive $21,759.48 from the "6058" Scottrade account to pay for expenses related to the marital home. (Apr. 3, 2014 JE, Doc. No. 159).

{¶28} On May 27, 2014, the trial court issued a final divorce decree. (May 27, 2014 JE, Doc. No. 164).

{¶29} On May 30, 2014, Robert filed his notice of appeal and a motion to stay the trial court's final order pending appeal. (Doc. Nos. 172, 175). The trial court denied Robert's motion to stay on July 3, 2014. (July 3, 2014 JE, Doc. No. 179). Robert raises eighteen assignments of error for our review. We elect to

address some of Robert's assignments of error out of the order presented in his brief, combining them where appropriate.

**Assignment of Error No. I**

**The trial court erred by conducting the proceedings with extreme prejudice toward Defendant/Appellant.**

{¶30} In his first assignment of error, Robert argues that the trial court demonstrated an obvious bias against him as a pro se litigant. Specifically, Robert argues that the trial court caused his February 27, 2014 appeal to be dismissed, improperly took judicial notice of cases with the intent to punish him, refused to accept his expert witness, caused the loss of his expert witness's testimony from the record, refused to admit his financial exhibit, failed to require Rebecca to abide by deadlines, refused to hear his motion to receive money for expenses, and refused his request for a stay of execution.

{¶31} This court does not have jurisdiction to vacate a trial court's judgment based on a claim of judicial bias. *Beer v. Griffith*, 54 Ohio St.2d 440, 441-42 (1978). *See also Fernandez v. Ohio State Pain Control Ctr.*, 10th Dist. Franklin No. 03AP-1018, 2004-Ohio-6713, ¶ 24-25 (finding that the plaintiff's argument that the trial court's decisions were erroneous based on bias or prejudice were not properly before the court even though it was unclear whether the plaintiff was arguing that the trial judge should have disqualified himself). In *Beer*, "the Ohio Supreme Court explicitly and unequivocally stated that, since only the Chief

Justice or his designee may hear disqualification matters, the Court of Appeals is without authority to pass upon disqualification or to void the judgment of the trial court on the basis of judicial bias." *Holloway v. Holloway Sportswear, Inc.*, 3d Dist. Shelby Nos. 17-98-20 and 17-2000-18, 2001 WL 633792, *4 (June 7, 2001), citing *Beer* at 441-442.

**{¶32}** Even if this court had jurisdiction to consider this assignment of error, Robert's arguments are without merit. "'A judge is presumed not to be biased or prejudiced, and a party alleging bias or prejudice must present evidence to overcome the presumption." *Cline v. Mtge. Electronic Registration Sys., Inc.*, 10th Dist. Franklin No. 13AP-240, 2013-Ohio-5706, ¶ 33, quoting *Wardeh v. Altabchi*, 158 Ohio App.3d 325, 2004-Ohio-4423, ¶ 20 (10th Dist.), citing *In re Disqualification of Kilpatrick*, 47 Ohio St.3d 605, 606 (1989) and *Eller v. Wendy's Internatl, Inc.*, 142 Ohio App.3d 321, 340 (10th Dist.2000). "'The existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party.'" *Id.* at ¶ 33, quoting *Wardeh* at ¶ 20. "A judge's rulings of law are legal issues, subject to appeal, and are not by themselves evidence of bias or prejudice." *Id.*, citing *Okocha v. Fehrenbacker*, 101 Ohio App.3d 309, 322 (8th Dist.1995).

**{¶33}** There is no evidence of bias or prejudice by the trial court against Robert, and his unsubstantiated accusations of improper conduct are insufficient to overcome the presumption of judicial integrity. *See id.*, citing *Cooke v. United Dairy Farmers, Inc.*, 10th Dist. Franklin No. 05AP-1307, 2006-Ohio-4365, ¶ 46. In fact, based on Robert's instigation of lawsuits against the trial court, the trial court concluded that a conflict of interest existed for all Logan County judges. (June 24, 2013 JE, Doc. No. 79). As a result, a visiting judge was assigned to preside over the remainder of the proceedings to avoid the appearance of any impropriety. (*Id.*).

**{¶34}** Robert's first assignment of error is dismissed.

### Assignment of Error No. III

**The trial court erred by not adopting or rejecting the Magistrate's temporary orders from hearing on February 6 2013[.]**

### Assignment of Error No. XIII

**The trial court erred by awarding an additional $ 20000 [sic] dollars to Plaintiff for no apparent reason in addition to spousal support.**

**{¶35}** In support of these assignments of error, Robert failed to cite any authority, failed to cite to the record, and failed to make any argument in support of his claims. "[A]n appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2): 'if the party raising it fails to identify in the record the error

on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *Rodriguez v. Rodriguez*, 8th Dist. Cuyahoga No. 91412, 2009-Ohio-3456, ¶ 4, quoting App.R. 12(A); *Hawley v. Ritley*, 35 Ohio St.3d 157, 159 (1988).

{¶36} App.R. 16(A)(7) requires that Robert include in his brief: "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.  The argument may be preceded by a summary."

{¶37} "'It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error.'" *Rodriguez* at ¶ 7, quoting *State v. McGuire*, 12th Dist. Preble No. CA95-01-001, 1996 WL 174609, *14 (Apr. 15, 1996).  "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal." *Id.*, citing *State v. Watson*, 126 Ohio App.3d 316, 321 (12th Dist.1998) and *McGuire* at *14.

{¶38} "Pro se civil litigants 'are bound by the same rules and procedures as those litigants who retain counsel.  They are not to be accorded greater rights and must accept their own mistakes and errors.'" *State ex rel. Hines v. Holland*, 3d Dist. Allen No. 1-95-62, 1996 WL 16869, *1 (Jan. 19, 1996), quoting *Meyers v. First Natl. Bank of Cincinnati*, 3 Ohio App.3d 209, 210 (1st Dist.1981).

**{¶39}** Because Robert failed to cite any legal authority or to the record in support of his arguments and failed to separately argue these assignments of error, we decline to review his third and thirteenth assignments of error.

**Assignment of Error No. II**

**The trial court erred by denying Defendant his due process.**

**{¶40}** In his second assignment of error, Robert initially contends that the trial court did not provide him due process of law by issuing a temporary restraining order against him. However, Robert did not assert this argument before the trial court. "[A] party waives the right to appeal an issue that it could have raised, but did not, in earlier proceedings." *During v. Quoico*, 10th Dist. Franklin No. 11AP-735, 2012-Ohio-2990, ¶ 36 (concluding that because Quoico failed to assert her due-process argument before the trial court, she waived her argument on appeal), citing *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, ¶ 34 and *Trish's Café & Catering, Inc. v. Ohio Dept. of Health*, 195 Ohio App.3d 612, 2011-Ohio-3304, ¶ 19 (10th Dist.). *See also Erwin v. Erwin*, 3d Dist. Marion No. 9-08-15, 2009-Ohio-407, ¶ 17, 20, citing *State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276, 278 (1993), citing *State ex rel. Gibson v. Indus. Comm.*, 39 Ohio St.3d 319 (1988). Because Robert failed to assert his due-process argument before the trial court, he waived his argument on appeal. As such, we decline to address it. *During* at ¶ 36; *Erwin* at ¶ 18.

{¶41} Robert also argues in his second assignment of error that he "was prevented from conducting impeachment testimony on the false affidavits submitted by [Rebecca]." Robert's argument is erroneous since the record shows that the trial court permitted Robert to question Rebecca about the affidavits for impeachment purposes. (*See* Oct. 30, 2013 Tr. at 148-153, 163-166). In fact, the trial court assisted Robert in asking questions of Rebecca to elicit the impeachment testimony regarding the affidavits he was seeking. (*See id.* at 163-164). Therefore, we reject Robert's argument.

{¶42} Robert further avers in this assignment of error that his restraining order against Rebecca was rendered useless when the trial court granted Rebecca's ex parte motion to remove items from the marital home and that Rebecca improperly submitted ex parte motions. Robert did not provide an argument relative to either assertion, and we decline to make one for him. *State v. Fisher*, 3d Dist. Hardin No. 6-13-03, 2014-Ohio-436, ¶ 7, citing App.R. 12(A)(2) and App.R. 16(A)(7).

{¶43} Robert's second assignment of error is overruled.

### Assignment of Error No. IV

**The trial court erred by awarding to Plaintiff that [sic] the real estate on which the marital home was constructed was [sic] gifted to Plaintiff/Appellee without documentation or evidence to support such claim.**

## Assignment of Error No. V

**The trial court erred in allowing landscaping cost to be granted as a gift to Plaintiff without documentation or evidence to support such claim.**

## Assignment of Error No. VI

**He [sic] trial court erred by allowing the appraised value of the 3 motor vehicles of the parties to be conducted by Plaintiff herself and not a certified appraiser.**

## Assignment of Error No. VII

**Trial court erred by not considering Defendant's testimony and documentation that he had his life insurance policy 5 years prior to the marriage's beginning.**

## Assignment of Error No. IX

**The trial court erred by dismissing open testimony and evidentiary proof that Defendant/Appellant had at least $225000 [sic] dollars in his retirement plan prior to the marriage.**

## Assignment of Error No. XVII

**The trial court erred by demonstrating un-equivocally an abuse of discretion and complete disregard for the facts and the law.**

{¶44} In his fourth, fifth, sixth, seventh, ninth, and seventeenth assignments of error, Robert avers that the trial court erred in its determination of marital and separate assets and its distribution of those assets.

{¶45} In determining the equitable distribution of assets in a divorce proceeding, the trial court engages in a two-step process—first, the trial court must

determine whether property is marital or separate property, and, second, the trial court must equitably allocate the marital and separate property. *Schalk v. Schalk*, 3d Dist. Seneca No. 13-07-13, 2008-Ohio-829, ¶ 6, citing *Gibson v. Gibson*, 3d Dist. Marion No. 9-07-06, 2007-Ohio-6965, ¶ 29, citing R.C. 3105.171(B), (D). Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate. *Barkley v. Barkley*, 119 Ohio App.3d 155, 160 (4th Dist.1997). The party seeking to establish that property is separate rather than marital bears the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. *Schalk* at ¶ 6, citing *Gibson* at ¶ 30.

**{¶46}** This court reviews a trial court's classification of property as marital or separate property under a manifest-weight-of-the-evidence standard. *Id.* Accordingly, we will not reverse the trial court's judgment if the decision is supported by some competent, credible evidence. *Eggeman v. Eggeman*, 3d Dist. Auglaize No. 2-04-06, 2004-Ohio-6050, ¶ 14, citing *DeWitt v. DeWitt*, 3d Dist. Marion No. 9-02-42, 2003-Ohio-851, ¶ 10 ("This highly deferential standard of review permits the affirmation of the trial court's judgment if there is 'even some evidence' to support the court's finding."). In determining whether competent, credible evidence exists, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use

those observations in weighing the credibility of the testimony." *Barkley* at 159, citing *In re Jane Doe I*, 57 Ohio St.3d 135 (1991).

{¶47} Once the characterization has been made, "the court should normally award each spouse his or her separate property and then distribute the marital estate equally unless an equal division would be inequitable." *Id.*, citing R.C. 3105.171(C), (D). *See also* R.C. 3105.171(B). Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981), paragraph two of the syllabus. A trial court's decision allocating marital property will not be reversed absent an abuse of discretion. *Jackson v. Jackson*, 3d Dist. Paulding No. 11-07-11, 2008-Ohio-1482, ¶ 15, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128 (1989). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A reviewing court may not simply substitute its judgment for that of the trial court. *Id.*

{¶48} In his fourth and fifth assignments of error, Robert argues that the trial court erred in determining that the the value of land on which the marital home was built and the value of its landscaping was separate property and in distributing it to Rebecca. We disagree. A review of the record indicates that the trial court's determination that the land on which the marital home was built and

the value of the landscaping was separate property is supported by some competent, credible evidence. Rebecca testified that her mother gifted to her the land on which the marital home was built in July 2008. (Oct. 30, 2013 Tr. at 85, 87). Rebecca admitted into evidence a general warranty deed showing that her mother conveyed the land to *only* her. (*See* Plaintiff's Ex. 20). Rebecca also testified that her mother gifted her $20,000 "a couple of years ago" and that she put "a little over $13,000" of it towards landscaping for the marital home. (*Id.* at 85-86, 87).

{¶49} In addition, Ann Thornberg ("Thornberg"), Rebecca's sister, testified that their mother provided her a similar land gift—that is, an acre and a half of land—and her mother gifted all of her children $20,000 "2 years ago when she sold her house." (*Id.* at 63-64). Thornberg also testified that Rebecca told her that she was going to use her $20,000 gift from their mother for landscaping. (*Id.* at 64).

{¶50} Accordingly, Rebecca met her burden of proving by a preponderance of the evidence that the land and value of the landscaping was separate property, and the trial court's conclusion that those items were Rebecca's separate property is supported by some competent, credible evidence. *See Barkley*, 119 Ohio App.3d at 159. Therefore, the trial court did not abuse its discretion in allocating

the value of the land and the value of the landscaping to Rebecca. *See* R.C. 3105.171(D).

**{¶51}** In his sixth assignment of error, Robert argues that the trial court erred by basing the value of the marital automobiles on Rebecca's appraisals. However, a review of the record reflects that Robert did not object to the introduction of the appraisals provided by Rebecca, nor did he offer appraisals of his own. (*See* Oct. 30, 2013 Tr. at 90-92, 170). The failure to timely object to the admission of evidence waives all but plain error on review. *Am. Builders & Contrs. Supply Co., Inc. v. Frank's Roofing, Inc.*, 3d Dist. Marion No. 9-11-41, 2012-Ohio-4661, ¶ 17; Evid.R. 13(A)(1), (D). "'In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *Id.*, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

**{¶52}** The circumstances of this case are not exceptional and do not give rise to plain error. Robert only cross-examined Rebecca on the appraisals she offered into evidence and did not offer his own appraisals into evidence. (Oct. 30, 2013 Tr. at 166-168, 210). (*See also* Defendant's Exs. I, J, K). Thus, Robert

failed to demonstrate that the trial court committed plain error by basing the value of the marital vehicles on Rebecca's appraisals.

{¶53} Without providing any substantive argument, Robert simply avers in his seventh and ninth assignments of error that the trial court erred by classifying portions of his life insurance policy and retirement plan as marital property. Because Robert was seeking to establish that portions of his life insurance policy and retirement plans were separate property, he bore the burden of proving by a preponderance of the evidence that those portions were separate property. *See Schalk*, 2008-Ohio-829, at ¶ 6.

{¶54} Once again, Robert failed to point us to any evidence in the record supporting that he met his burden of proving that portions of his life insurance policy and retirement plan should be considered separate property. In his case-in-chief, Robert testified that he purchased the life insurance policy in 1988 and made Rebecca the beneficiary in 1997 or 1998. (Oct. 30, 2013 Tr. at 175). He testified that he thought the principle value of the life insurance policy was $10,500.[4] (*Id.*). Robert did not provide any testimony regarding any portion of his retirement plan being separate property; rather, he stated, "My retirement program, my… I will let me [sic] expert witness go into the details on that. Okay." (*Id.*).

---

[4] In his brief, Robert avers that the value of his life insurance policy that should have been deemed to be separate property was $9,400. (*See* Appellant's Brief at 4).

{¶55} Robert did not submit any documents to establish, or support his testimony, that portions of his life insurance policy and his retirement plan should be deemed separate property. *See Schalk* at ¶ 12. (*See also* Oct. 30, 2013 Tr. at 210); (Defendant's Exs. I, J, K). Indeed, the evidence he offered relating to his life insurance policy depicts its value only during the marriage. (*See* Defendant's Ex. J). In his "Final Pre-Trial Statement," Robert included, as Exhibit H, "Tracings of Retirement Plan and House Mortgage." (Doc. No. 118). However, Robert did not provide the exhibit; instead, he stated, "This is part of over 300 pages of related documents that Defendant will submit to the Court if necessary." (*Id.*). Robert did not submit those documents to the trial court. In fact, the trial court stated in its opinion and findings, "As to [Robert's retirement] account, [Robert] attempted to demonstrate that it was his separate property. He was unable to do so, although the Court offered him additional time to obtain necessary documents. He likewise declined the Court's offer to permit a proffer of the evidence." (Feb. 13, 2014 JE, Doc. No. 142). Likewise, Robert did not object to the submission of Rebecca's exhibits reflecting the value of the life insurance policies she requested the trial court to consider as marital property. (Oct. 30, 2013 Tr. at 170-171, 210); (Plaintiff's Exs. 13, 14).

{¶56} Since Robert provided no evidence as to the premarital value of his life insurance policy and retirement plan, it was impossible to determine what

portion, if any, of the life insurance policy and retirement plan should be deemed separate property. *See Schalk* at ¶ 17. Therefore, Robert did not meet his burden of tracing the portions of his life insurance policy and retirement plan that he sought to be deemed separate property. *See id.* at ¶ 18. As such, the trial court's determination that Robert's life insurance policy and retirement plan were marital property is supported by some competent, credible evidence.

{¶57} In Robert's seventeenth assignment of error, he contends that the trial court's allocation of marital property is unsupported by facts and is contrary to law. However, in this assignment of error Robert does not cite any specific allocation of a marital asset or any legal support for why he contends its division was contrary to law. Thus, we decline to further address this assignment of error. App.R. 12(A); App.R. 16(A)(7).

{¶58} For these reasons, Robert's fourth, fifth, sixth, seventh, ninth, and seventeenth assignments of error are overruled.

### Assignment of Error No. XII

**Trial court erred by finding Defendant in contempt not only as un-justified but based on the Magistrate's order which was never acted upon by the court.**

### Assignment of Error No. XV

**Trial court erred by awarding attorney's [sic] based on the Judges allegations not supported in the final order nor supported by the record.**

{¶59} In his twelfth assignment of error, Robert contends that the trial court erred by finding him in contempt of court. In his fifteenth assignment of error, Robert argues that the trial court erred in ordering him to pay Rebecca's attorney's fees.

{¶60} A trial court has inherent authority to enforce its prior orders through contempt. *Dozer v. Dozer*, 88 Ohio App.3d 296, 302 (4th Dist.1993). *See also* R.C. 2705.02(A). "Under Ohio law, contempt of court consists of two elements." *Cichanowicz v. Cichanowicz*, 3d Dist. Crawford No. 3-13-05, 2013-Ohio-5657, ¶ 88, citing *Frey v. Frey*, 197 Ohio App.3d 273, 2011-Ohio-6012, ¶ 17 (3d Dist.), citing *Cooper v. Cooper*, 14 Ohio App.3d 327, 328-329 (8th Dist.1984). "'The first is a finding of contempt of court and the second is the imposition of a penalty or sanction, such as a jail sentence or fine.'" *Id.*, quoting *Frey* at ¶ 17, quoting *Cooper* at 328-329.

{¶61} "A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders." *Moraine v. Steger Motors, Inc.*, 111 Ohio App.3d 265, 268 (2d Dist.1996), citing *ConTex, Inc. v. Consolidated Technologies, Inc.*, 40 Ohio App.3d 94, 95 (1st Dist.1988). "'Clear and convincing evidence' has been defined as 'that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in

criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 331 (1999), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶62}** This court will not reverse a finding of contempt absent an abuse of discretion by the trial court. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981); *Dozer* at 302. Similarly, an appellate court reviews the punishment imposed for contempt under an abuse-of-discretion standard. *Wilson v. Jones*, 3d Dist. Seneca No. 13-13-06, 2013-Ohio-4368, ¶ 32, citing *Whitman v. Whitman*, 3d Dist. Hancock No. 5-11-20, 2012-Ohio-405, ¶ 52.

**{¶63}** The trial court did not abuse its discretion in finding Robert in contempt of court because there was clear and convincing evidence that Robert disobeyed a prior order of the court. Yet, Robert argues that he was not required to comply with the magistrate's temporary orders because the orders were not adopted by the trial court. Robert is mistaken.

**{¶64}** Objections to a magistrate's decision must meet the requirements set forth in Civ.R. 53(D)(3)(b). *Tewalt v. Peacock*, 3d Dist. Shelby Nos. 2010-CA-40 and 2010-CA-41, 2011-Ohio-1726, ¶ 20. Under Civ.R. 53(D)(3)(b)(iii), a party objecting to a magistrate's decision must file transcripts of all the evidence presented to the magistrate. *Id.* at ¶ 21.

An objection to a factual finding * * * shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. * * * The objecting party *shall* file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

(Emphasis added.) Civ.R. 53(D)(3)(b)(iii).

**{¶65}** Robert filed his objections to the magistrate's temporary orders on March 1, 2013. (Doc. No. 67). However, because Robert failed to file a transcript in accordance with the rule, the trial court overruled Robert's objections. (Aug. 8, 2013 JE, Doc. No. 97); (Aug. 2, 2013 Tr. at 11-19). *See also Elson v. Plokhooy*, 3d Dist. Shelby No. 17-10-24, 2011-Ohio-2009, ¶ 31 (concluding that the trial court did not abuse its discretion in failing to consider the transcript because it was not filed in accordance with Civ.R. 53(D)(3)(b)(iii)). As such, the trial court adopted the February 25, 2013 magistrate's temporary orders. (Aug. 8, 2013 JE, Doc. No. 97).

{¶66} The trial court's February 25, 2013 magistrate's temporary orders ordered Robert to pay Rebecca $20,000 in temporary spousal support. (Feb. 25, 2013 JE, Doc. No. 61). Robert admitted that he did not comply with the magistrate's temporary orders. (*See* Oct. 30, 2013 Tr. at 52-53); (Apr. 9, 2013 Tr. at 2, 4, 13); (Appellant's Reply Brief at 7). Therefore, there was clear and convincing evidence that Robert did not comply with the magistrate's temporary orders. As a result, we are unable to conclude that the trial court abused its discretion in finding Robert in contempt of court.

{¶67} We are also unable to conclude that the trial court abused its discretion in ordering Robert to pay Rebecca's attorneys' fees based on finding Robert in contempt for failing to pay temporary spousal support. First, for an order finding a party in contempt of court to be a final, appealable order, the trial court must impose a penalty or sanction. *Cichanowicz*, 2013-Ohio-5657, at ¶ 88. Second, R.C. 3105.18(G) requires the trial court to impose court costs and reasonable attorney's fees if it determines that a party is in contempt of court for failing to pay spousal support. R.C. 3105.18(G) provides:

> If any person required * * * to pay spousal support under an order
> made or modified by a court on or after January 1, 1991, is found in
> contempt of court for failure to make alimony or spousal support
> payments under the order, the court that makes the finding, in

addition to any other penalty or remedy imposed, *shall* assess all court costs arising out of the contempt proceeding against the person and *shall* require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt.

(Emphasis added.) The trial court ordered Robert to pay Rebecca's attorney's fees based its finding of contempt and "the court costs resulting from this action to date." (May 27, 2014 JE, Doc. No. 164). Therefore, because contempt of court requires a finding of contempt and the imposition of a penalty, and R.C. 2105.18(G) requires the trial court to assess court costs and reasonable attorney's fees relating to the act of contempt, the trial court did not abuse its discretion in awarding Rebecca attorney's fees based on finding Robert in contempt of court. (*See* Feb. 13, 2013 JE, Doc. No. 142).

{¶68} Robert also argues that the trial court abused its discretion in assessing the remainder of Rebecca's attorney's fees that it imposed on him. As an initial matter regarding the trial court's award of attorney's fees to Rebecca, we note that Robert waived all but plain error as to this issue for appeal because he failed to object to Rebecca's request for attorney's fees. (*See* Oct. 30, 2013 Tr. at 127, 171). *See also Am. Builders & Contrs. Supply Co., Inc.*, 2012-Ohio-4661, at ¶ 17; Evid.R. 13(A)(1), (D). The failure to object to the request for attorney's fees

waives all but plain error on review. *Id.*; *Id.* As we noted above, plain error may be applied only in rare circumstances where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Id.*, quoting *Goldfuss*, 79 Ohio St.3d 116, at syllabus.

**{¶69}** Robert failed to demonstrate that the trial court committed plain error in awarding Rebecca reasonable attorney's fees. *See Carroll v. Carroll*, 5th Dist. Delaware No. 05CAF110079, 2006-Ohio-5531, ¶ 84 (concluding that the appellant failed to assert that the trial court committed plain error in awarding attorney's fees). R.C. 3105.73(A) provides:

> In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

**{¶70}** The trial court considered the totality of the circumstances and the equities of the parties in awarding Rebecca $9,022.50 in attorney's fees, including

its award of attorney's fees based on finding Robert in contempt of court. (*See* May 27, 2014 JE, Doc. No. 164). In particular, the trial court considered that the record reflected that Robert flagrantly abused the legal system with unnecessary and irrelevant filings, which had no apparent purpose other than to delay the proceedings. (Feb. 13, 2013 JE, Doc. No. 142). The trial court's findings sufficiently supported the trial court's award of attorney's fees to Rebecca. *See Klayman v. Luck*, 8th Dist. Cuyahoga Nos. 97074 and 97075, 2012-Ohio-3354, ¶ 41-43 (concluding that the trial court did not abuse its discretion in awarding $325,000 in attorney's fees where the husband purposefully prolonged the litigation and sued the wife and her attorney in federal court). Therefore, we do not find any error which "'seriously affects the basic fairness, integrity, or public reputation of the judicial process'" regarding the trial court's award of attorney's fees to Rebecca. *Carroll* at ¶ 84, quoting *Goldfuss* at paragraph one of the syllabus.

{¶71} Robert's twelfth and fifteenth assignments of error are overruled.

### Assignment of Error No. XI

**Trial court erred by not only awarding spousal support to Plaintiff but the grossly inappropriate duration.**

{¶72} In his eleventh assignment of error, Robert argues that the trial court erred in awarding Rebecca spousal support for a grossly inappropriate duration.

**{¶73}** Spousal support is defined as "any payment or payments * * * that is both for sustenance and for support of the spouse or former spouse." R.C. 3105.18(A). Trial courts have broad discretion concerning an award of spousal support, and therefore, a trial court's decision will not be reversed absent an abuse of discretion. *Tremaine v. Tremaine*, 111 Ohio App.3d 703, 706 (2d Dist.1996); *Siekfer v. Siekfer*, 3d Dist. Putnam No. 12-06-04, 2006-Ohio-5154, ¶ 15; *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990). Although a trial court has broad discretion in fashioning an equitable spousal support award based on the facts and circumstances of each case, this discretion is not unlimited. *Kunkle* at 67; *Cherry*, 66 Ohio St.2d at 355. In reviewing a spousal-support award, an appellate court must "look at the totality of the circumstances and determine whether the trial court acted unreasonably, arbitrarily or unconscionably." *Kunkle* at 67.

R.C. 3105.18 governs spousal support and provides, in pertinent part:

(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties * * *;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment,

provided the education, training, or job experience, and employment is, in fact, sought;

(l)  The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n)  Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1).

**{¶74}** After reviewing the record, we cannot conclude that the trial court abused its discretion by ordering Robert to pay Rebecca spousal support in the amount of $700 per month for sixty months, and $500 per month thereafter until either party dies or until Rebecca remarries.  While the trial court did not specifically state that it considered R.C. 3105.18(C)(1) in ordering Robert to pay Rebecca spousal support in its final divorce decree, it stated that it considered R.C. 3105.18(C)(1) in its February 13, 2014 opinion and findings.  (*See* Feb. 13, 2014 JE, Doc. No. 142).  *See also Benjelloun v. Benjelloun*, 12th Dist. Butler No. CA2012-01-004, 2012-Ohio-5353, ¶ 25 (it is sufficient that the record establishes that the trial court considered the factors in its decision to award spousal support if the trial court does not list the specific findings in the final divorce decree).

**{¶75}** Nonetheless, Robert argues that the factors the trial court considered were improper. In particular, Robert argues that it was improper for the trial court to consider his potential social-security earnings to determine the amount of Rebecca's spousal support under R.C. 3501.17.[5] Robert's argument is meritless for two reasons. First, "[a] court should consider social security benefits when determining whether spousal support is correct." *Minear v. Palkovic*, 7th Dist. Mahoning No. 09-MA-61, 2009-Ohio-6752, ¶ 17, citing *Beyer v. Beyer*, 64 Ohio App.2d 280, 284 (8th Dist.1979). Second, R.C. 3105.171 prohibits the division of social-security benefits in a divorce proceeding, but not the consideration of social-security benefits as a relevant and equitable factor in making an equitable distribution. *See Thompson v. Thompson*, 1st Dist. Hamilton No. C-050578, 2006-Ohio-2623, ¶ 22-23, citing *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 11. Thus, the trial court did not err in considering Robert's potential social security earnings in determining Rebecca's spousal support.

**{¶76}** Therefore, considering the totality of the circumstances of this case, the trial court did not act unreasonably, arbitrarily, or unconscionably in ordering Robert to pay Rebecca spousal support.

**{¶77}** Robert's eleventh assignment of error is overruled.

---

[5] We presume Robert intended to cite R.C. 3105.171.

-34-

## Assignment of Error No. XVI

**Trial court erred by not stating in it's [sic] final order any evidentiary findings or citation of financial facts to support any order put forward.**

{¶78} In his sixteenth assignment of error, Robert argues that the trial court erred by "not presenting a detailed accounting of its decision supported by the evidence as required by Ohio law." (Appellant's Brief at 18). Before we address the merits of this assignment of error, we note that Robert did not draw our attention to any specific failure of the trial court in its judgment entry, nor did Robert indicate any facts or law that the trial court failed to consider. However, because Robert argues in this assignment of error that the trial court prejudicially divided marital assets, we are presuming that he is also arguing that the trial court did not make the appropriate findings of fact and conclusion of law under R.C. 3105.171(G), which reads:

> In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage."

{¶79} Robert's assignment of error is meritless for two reasons. First, Robert's argument is erroneous because the trial court issued a detailed and

thorough six-page opinion and findings espousing the specific evidentiary findings and financial facts it considered in its distribution of marital assets. (*See* Feb. 13, 2014 JE, Doc. No. 142).

**{¶80}** Second, Robert did not request from the trial court its findings of fact or conclusions of law under Civ.R. 52. Civ.R. 52 provides:

> When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.

"[T]he burden is on the party objecting to request findings of fact" under Civ. R. 52. *Hutta v. Hutta*, 5th Dist. Delaware No. 10CAF040031, 2011-Ohio-3041, ¶ 15. Since Robert failed to request more specific findings of fact and conclusions of law, he waived any claim that the trial court did not make the appropriate findings of fact or conclusions of law. *Cichanowicz*, 2013-Ohio-5657, at ¶ 76.

**{¶81}** For these reasons, Robert's sixteenth assignment of error is overruled.

**Assignment of Error No. XVIII**

**The trial court erred by causing Defendant/Appellant's Expert Witness testimony to be lost from the record.**

{¶82} In his eighteenth assignment of error, Robert alleges that the trial court erred by causing his expert witness's testimony to be lost from the record. Specifically, Robert argues that, because the portion of transcript containing the testimony of his expert witness was lost, he was denied the opportunity to present a proper defense and denied a fair division of marital assets. While Robert again failed to cite any legal authority or cite to the record in support of his argument, and also failed to provide a relevant argument in support of this assignment of error, we elect to address it in the interests of justice.

{¶83} Under App.R. 9, an appellant must submit to the appellate court a transcript of the trial court proceedings they deem necessary for the appellate court's review. *State v. Getzinger*, 3d Dist. Henry No. 7-12-06, 2013-Ohio-2146, ¶ 18. *See also* App.R. 9. However, if no transcript is available, App.R. 9(C) and (D) provide alternatives for the appellant. *Id.* at ¶ 19.

{¶84} Here, the record indicates that the recording device was inadvertently shut off and the portion of the transcript of which Robert complains was not recorded. As a result, Robert had a duty under App.R. 9(B)(4) to prepare a statement of the evidence under App.R. 9(C) or an agreed statement under App.R. 9(D). *See* App.R. 9(B)(4), (C), (D). App.R. 9(C) provides, in relevant part:

(1) If no recording of the proceedings was made, if a transcript is unavailable, or if a recording was made but is no longer available for transcription, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement *shall be served on the appellee* no later than twenty days prior to the time for transmission of the record pursuant to App. R. 10 and the appellee may serve on the appellant objections or propose amendments to the statement within ten days after service of the appellant's statement; these time periods may be extended by the court of appeals for good cause. The statement and any objections or proposed amendments *shall be forthwith submitted to the trial court for settlement and approval.* The trial court shall act prior to the time for transmission of the record pursuant to App.R. 10, and, as settled and approved, *the statement shall be included by the clerk of the trial court in the record on appeal.*

(Emphasis added.) App.R. 9(C)(1). App.R. 9(D) provides, in relevant part:

(1) In lieu of the record on appeal as defined in division (A) of this rule, *the parties*, no later than ten days prior to the time for transmission of the record under App.R. 10, may prepare and sign a

statement of the case showing how the issues raised in the appeal arose and were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented. If the statement conforms to the truth, it, together with additions as the trial court may consider necessary to present fully the issues raised in the appeal, *shall be approved by the trial court prior to the time for transmission of the record under App.R. 10 and shall then be certified to the court of appeals as the record on appeal and transmitted to the court of appeals by the clerk of the trial court within the time provided by App.R. 10*.

(Emphasis added.) App.R. 9(D)(1).

**{¶85}** Robert submitted to the trial court on February 21, 2014 "Defendants [sic] Testimony Regarding Missing Time From Court Tape Recorded Required by the Court" in which he espouses his recollection of his expert witness's testimony. (*See* Doc. No. 148). There is no evidence in the record that Robert served his statement of the evidence on Rebecca, that the parties agreed to *any* statement of the evidence, or that the trial court transmitted an approved statement of the evidence to this court in accordance with App.R. 9(C) or (D). Therefore, Robert's

February 21, 2014 submission failed to comport with the requirements of App.R. 9(C) or (D). *See Getzinger* at ¶ 22-24.

**{¶86}** "In the absence of a complete transcript of the proceedings, a statement of the evidence pursuant to App.R. 9(C), or an agreed statement pursuant to App.R. 9(D), an appellate court 'has no alternative but to indulge the presumption of the regularity of the proceedings and the validity of the judgment in the trial court.'" *Collins v. Collins*, 3d Dist. Marion No. 9-11-32, 2012-Ohio-749, ¶ 27, quoting *Tyler v. Tyler*, 3d Dist. Marion No. 9-88-50, 1990 WL 97662, *2 (July 16, 1990) and *Ostander v. Parker-Fallis Insulation Co., Inc.*, 29 Ohio St.2d 72, 74 (1972).

**{¶87}** Thus, because Robert failed to file a statement of evidence under App.R. 9(C) or an agreed statement under App.R. 9(D), he waived his alleged error. *Holmer v. Holmer*, 3d Dist. Seneca No.13-07-28, 2008-Ohio-3228, ¶ 32, citing *Steiner v. Steiner*, 85 Ohio App.3d 513, 524 (4th Dist.1993), citing *State v. Brewer*, 48 Ohio St.3d 50, 61 (1990). *See also Beer v. Beer*, 10th Dist. Franklin No. 04AP-93, 2004-Ohio-4559, ¶ 9 (because the appellant failed to file a transcript, or acceptable alternative, the appellant "failed to bear his burden of showing error by reference to matters in the record").

**{¶88}** Therefore, Robert's eighteenth assignment of error is overruled.

**Assignment of Error No. VIII**

**The trial court erred by allowing Plaintiff to assert that Defendant/Appellant's investment behavior was responsible for losing assets without evidentiary proof or an independent forensic accounting.**

**Assignment of Error No. X**

**The trial court erred by not allowing Defendant's Expert witness to perform tracings of Defendant's financial accounts, earnings and distribution of said monies.**

**Assignment of Error No. XIV**

**The trial erred by ignoring Plaintiff's admission that she submitted false affidavits in support of Plaintiff's restraining order preventing Defendant's access to said account resulting in the loss of at least $250000 [sic] dollars from said account.**

{¶89} In his eighth, tenth, and fourteenth assignments of error, Robert challenges the trial court's admission and exclusion of evidence at the trial. "'[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence.'" *Hart v. Cardinal Health 110, Inc.*, 3d Dist. Hancock No. 5-10-10, 2010-Ohio-3551, ¶ 9, quoting *Rigby v. Lake County*, 58 Ohio St.3d 269, 271 (1991). *See also Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 79, citing *Donovan v. Donovan*, 110 Ohio App.3d 615, 520 (12th Dist.1996), *In re Bays*, 12th Dist. Warren No. CA2003-02-026, 2004-Ohio-915, ¶ 7, and *State v. Robb*, 88 Ohio St.3d 59, 68

(2000). "Therefore, a trial court's admission or exclusion of evidence will not be reversed absent an abuse of discretion." *Id.*; *Id.*

**{¶90}** In his eighth and tenth assignments of error, Robert argues that the trial court erred by prohibiting his expert witness from testifying. Whether a trial court properly admits expert testimony depends on whether the facts and data that the expert witness's opinion is based on is "admitted in evidence at the hearing." *Hart* at ¶ 10, quoting Evid.R. 703. A party seeking to establish that an error occurred "'bears the burden of showing error by reference to matters in the record.'" *Id.*, quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). "'When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.'" *Id.*, quoting *Knapp* at 199.

**{¶91}** Determining whether the trial court properly admitted or excluded Robert's expert witness's testimony requires the portion of the trial transcript that contained his expert witness's trial testimony, which, as we addressed in Robert's eighteenth assignment of error, Robert failed to provide. *Id.* at ¶ 9. Because Robert failed to provide that portion of the transcript, we presume that the trial court properly excluded Robert's expert witness's testimony. *Id.* at ¶ 10, citing

*Knapp* at 199. Thus, we cannot conclude that the trial court abused its discretion by excluding Robert's expert witness's testimony.

{¶92} Also in his eighth assignment of error, Robert contends that the trial court erred by allowing Rebecca to assert that his investment behavior was responsible for losing assets. However, because Robert failed to cite any legal authority and failed to cite to the record support of this argument, we decline to address it. *Rodriguez*, 2009-Ohio-3456, ¶ 7.

{¶93} In Robert's fourteenth assignment of error, he contends that the trial court erred by ignoring Rebecca's admission that the affidavit that she submitted in support of her temporary restraining order request was incorrect. Evid.R. 402 precludes the admission of irrelevant evidence. Under Evid.R. 401, evidence is relevant where it has "[a]ny tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Whether Rebecca's affidavit was incorrect was of no consequence to the determination of this case—that is, the trial court was determining the division of assets and the affidavit had no bearing on the division of assets. (*See* Oct. 30, 2013 Tr. at 151, 161). Thus, because whether Rebecca's affidavit was correct was irrelevant to this case, the trial court did not abuse its discretion in "ignoring" Rebecca's "incorrect" affidavit. *See Cottrell*, 2013-Ohio-2397, at ¶ 82 (concluding that the trial court did not abuse its discretion

in refusing to admit evidence regarding an investment account and evidence of inconsistent testimony from a prior hearing at its custody and parenting hearings after determining that such evidence was irrelevant to those hearings).

{¶94} For these reasons, Robert's eighth, tenth, and fourteenth assignments of error are overruled.

{¶95} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**